513 F.2d 201
 2 O.S.H. Cas.(BNA) 1698, 1974-1975 O.S.H.D. ( 19,496
 The BUDD COMPANY, Petitioner in No. 74-1256,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent.
INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE,
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW)
and its Locals 813 and 92, Petitioners
in No. 74-1781,
v.
OCCUPATIONAL SAFETY AND HEALTH REVIEW COMMISSION, Respondent.
 Nos. 74-1256, 74-1781.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 4, 1975.
Decided March 24, 1975.
 
 John C. Wright, Jr., Peter B. Broida, Philadelphia, Pa., for the Budd Co.; Montgomery, McCracken, Walker & Rhoads, Stephen I. Schlossberg, Gen. Counsel, UAW, Washington, D. C., M. Jay Whitman, Asst. Gen. Counsel, UAW, Detroit, Mich., of counsel.
 Anne M. Trebilcock, for UAW.
 Carla A. Hills, Asst. Atty. Gen., Stephen F. Eilperin, Michael H. Stein, App. Section, Civ. Div., Dept. of Justice, Washington, D. C., for Occupational Safety and Health Review Commission.
 Before ADAMS, ROSENN and WEIS, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM:
 
 
 1
 The principal issue on this appeal is whether the Occupational Safety and Health Review Commission committed reversible error when it concluded that 29 C.F.R. § 1910.132(a),[1] a safety regulation promulgated by the Secretary of Labor pursuant to the Occupational Safety and Health Act,[2] does not mandate that employers bear the cost of protective footwear required by the regulation.
 
 
 2
 In the autumn of 1971, compliance officers from the Occupational Safety and Health Administration inspected two Budd Company plants. Budd, cited for violating a series of the applicable safety standards issued by the Secretary, contested several of the citations. After the Secretary filed complaints against Budd with respect to the alleged violations, the cases regarding the two plants were consolidated and referred to a hearing examiner.
 
 
 3
 The only citation relevant to the present appeal[3] concerned the alleged violation of § 1910.132(a) on the ground that Budd failed to provide protective footwear for certain of its employees. Before the hearing examiner, Budd moved to withdraw its notice of contest relating to the use of foot protection "specifically on condition that it is understood that the obligation to provide this foot protection does not include the obligation to pay for the protection. . . . " The Secretary did not object to Budd's motion but the union representing Budd's employees did.
 
 
 4
 On August 22, 1972, the examiner entered an order provisionally denying Budd's motion to withdraw its notice of contest and scheduled a hearing for September 13th on the question whether Budd's motion should be granted. The examiner stated:
 
 
 5
 14. (W)ho shall be liable for the cost (of protective shoes is) not (a) proper subject for determination under the Act. (It is), rather (a) matter which must be privately resolved by the employer and his employees. . . .
 
 
 6
 15. It is improper therefore to impose on the employer's duty to provide safety shoes whenever necessary under the standard at 29 C.F.R. 1910.132(a) and (b), the condition that it is not his obligation to pay for such shoes.
 
 
 7
 On August 28, 1972, the examiner vacated his August 22nd order and replaced it with a similar order denying Budd's motion to withdraw its notice of contest and directing that a hearing on Budd's motion take place September 13, 1972. The place of the hearing was changed, however, and the August 28th decision deleted the sentence previously appearing in the August 22nd order which referred to the cost of the shoes as a proper subject for private resolution.
 
 
 8
 The hearing previously scheduled for September 13th was finally held on October 19, 1972. On November 1, 1972, the administrative law judge ruled that 1910.132(a) "requires the employer to provide, require the use of and maintain in a sanitary and reliable condition, protective equipment, in this case safety shoes. . . . " The November 1st decision made no further reference to the allocation of the cost of safety equipment, and denied Budd's conditional motion to withdraw its notice of contest.
 
 
 9
 Budd sought and obtained discretionary review by the Occupational Safety and Health Review Commission of the order of November 1st.
 
 
 10
 The Commission, in an opinion announced March 4, 1974, decided that "subpart (a) (of 1910.132) imposes no duty on the employer to provide or pay for" the safety equipment at issue here. The Commission ruled that Budd had violated the standard by failing to see to it that Budd's employees wore safety shoes when required, but that the hearing examiner erred in refusing to allow Budd to withdraw its notice of contest on the understanding that Budd was not required by the regulation to pay for the shoes. The Commission offered the following rationale:
 
 
 11
 Unlike other labor statutes with essentially economic purposes, the Act is concerned solely with safety and health in the work situation. Prescription of cost allocations is not essential to the effectuation of the Act's objectives. . . . 5 The question of cost allocation, on the other hand, is a question to be resolved between employer and employee. In our judgment, it is an appropriate subject for collective bargaining. (additional footnotes omitted)
 
 
 12
 In footnote 5 the Commission explained the scope of its decision:
 
 
 13
 5. We do not imply that an employer is not to bear the cost of things such as capital equipment which is ordinarily his responsibility to assume. We are here considering the cost allocation of personal equipment. . . . (W)e note that the most universally used foot protective equipment is the steel-toed shoe. Thus, the most universally used type of protection is uniquely personal and may be used by the employee when he is away from the job.
 
 
 14
 In a concurring opinion, Commissioner Cleary indicated that under his interpretation of 1910.132, the employer has a duty to "provide" the safety shoes, but that the standard does not address the allocation of costs. He concluded, therefore, that "in my view the Commission lacks jurisdiction to provide relief as to costs."[4]
 
 
 15
 Budd petitioned this Court for review of the Commission's decision with respect to an alleged violation relating to acetylene cylinders, an item that is no longer at issue.[5] The union petitioned the District of Columbia Circuit to review the Commission's ruling with respect to the issue of which party, the employer or the employee, was to bear the cost of protective shoes. On motion by the Commission, the union's petition was transferred to this Court and consolidated with the Budd petition.
 
 
 16
 Jurisdiction.
 
 
 17
 Budd contends that this Court has no jurisdiction to consider the union's objections to the Commission's decision. The August 22nd opinion (or alternatively the August 28th opinion) of the hearing examiner, Budd asserts, became a final order of the Commission when the Commission did not grant review of that decision within 30 days.[6] The examiner, according to Budd, had no authority to amend his decision on November 1st, since after issuance of the examiner's decision, modifications could be made only by the Commission.[7] Commission review of the examiner's November 1st ruling, Budd continues, was a nullity, since the examiner's August 22nd opinion had already, by operation of law, became the final ruling of the Commission, inasmuch as the Commission had not granted review of the August 22nd order within 30 days. Since the August 22nd decision had not been appealed to a court of appeals within 60 days of its becoming the final order of the Commission,[8] Budd concludes, this Court has no jurisdiction.
 
 
 18
 The flaw in Budd's jurisdictional argument is that the examiner's orders of August 22nd and August 28th were only preliminary to the examiner's hearing on Budd's motion to withdraw its notice of contest. The November 1st decision, issued after the October 19th hearing, was the definitive order of the examiner contemplated by 29 U.S.C. § 661(i) and 29 C.F.R. § 2200.90, and the union's petition for review was filed within sixty days of the issuance of the Commission's November 1st decision.
 
 
 19
 The Interpretation of 1910.132(a).
 
 
 20
 On the substance of the union's objection to the Commission's ruling, the scope of this Court's review is limited. As we said in Brennan v. Occupational Safety and Health Review Commission (Hanovia Lamp Div.):[9]
 
 
 21
 (A)side from findings of fact it seems clear that we can set aside Commission adjudicatory conclusions which we find to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."
 
 
 22
 In dealing with questions regarding the interpretation of statutes or regulations which have been committed to a federal administrative agency for enforcement and implementation, the federal courts are obliged to accord "great deference" to the agency's construction of the language in question. The Supreme Court described the principle in Udall v. Tallman:[10]
 
 
 23
 When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. . . . "Particularly is this respect due when the administrative practice at stake 'involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried or new.' " . . . When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order.
 
 
 24
 Consequently, the agency's interpretation of a regulation "is deemed of controlling weight as long as it is one of several reasonable interpretations . . . even though the chosen exegesis may not appear quite as reasonable as some other construction."[11]
 
 
 25
 In this proceeding the union asserts that the Commission's interpretation of 1910.132(a) that the question of who should pay for the protective shoes is a matter for negotiation is incorrect and contrary to the congressional purpose embodied in the Occupational Safety and Health Act. However, since the Commission and the Secretary of Labor are entrusted with the responsibility for administering the Act's safety program, this Court must accord significant weight to their interpretation of the statute and the regulations promulgated thereunder by the Secretary.[12]
 
 
 26
 The Commission and the Secretary, through their day-to-day experience with the subject matter, are cognizant of the existing industrial hazards, the prevalent safety practices, and the economic and safety consequences of adopting the accident-prevention measures available.[13] The Commission and the Occupational Safety and Health Administration were assigned the task of administering the Act in order to take advantage of the expertise which only a specialized agency can develop.[14] The members of the Commission are required to be specially qualified "by reason of previous training, education or experience in the field."[15] Therefore, the courts should yield to the Secretary and the Commission a relatively broad discretion in interpreting the Act and the Secretary's regulations.[16]
 
 
 27
 At least with respect to the question who should pay the cost of protective footwear the issue here the Commission's interpretation of 29 C.F.R. § 1910.132(a) is not unreasonable. We need not now decide whether the Commission could reasonably conclude that the employer is not obligated to bear the cost of other mandatory protective equipment.
 
 
 28
 The provisions of the Act itself do not conflict with the Commission's reading of the Secretary's regulation. Congress did not explicitly require that the employer pay the price of personal protective equipment and clothing, though Congress has, both in this Act[17] and in other job-safety legislation,[18] specifically imposed on the employer certain expenditures promoting employee health and safety.
 
 
 29
 Moreover, the Commission's interpretation of the regulation does not interfere with the attainment of the congressional purpose. This Act, unlike such legislation as the Fair Labor Standards Act,[19] is not concerned with wages and hours, but rather with reducing the incidence of job-related injuries.[20]
 
 
 30
 The decision of the Commission in no way diminishes the employer's obligation to ensure that safety shoes are in fact worn when required.[21] The use of protective equipment is not, as the union implies, made negotiable by the Commission's ruling. Rather, the only negotiable issue is who will pay for the shoes that must be used. Moreover, the mandate of the regulation must be complied with immediately. The Commission's order does not, as the union asserts, enable the employer to delay implementation of the standard during the bargaining over the economic issue.
 
 
 31
 The Commission's ruling is a reasonable reading of the language of 1910.132(a). This regulation, unlike others drafted by the Secretary pursuant to the Act,[22] does not explicitly require that the employer finance the implementation of the safety measure.[23] The verbs "provided, used and maintained" set forth in subsection (a), are all phrased in the passive voice, without specifying who is to perform these functions. At least one of the items of conduct use must be carried out by the employees. Furthermore, subpart (b) of 1910.132[24] clearly contemplates that employees will provide some protective equipment.
 
 
 32
 Accordingly, since we conclude that the Commission's decision is not inconsistent with the statutory purpose, and its interpretation is a reasonable reading of the language of the safety standard, the Commission's order will be affirmed.
 
 
 
 [1]
 29 C.F.R. § 1910.132(a) provides:
 § 1910.132 General Requirements.
 (a) Application. Protective equipment, including personal protective equipment for eyes, face, head, and extremities, protective clothing, respiratory devices, and protective shields and barriers, shall be provided, used, and maintained in a sanitary and reliable condition wherever it is necessary by reason of hazards of processes or environment, chemical hazards, radiological hazards, or mechanical irritants encountered in a manner capable of causing injury or impairment in the function of any part of the body through absorption, inhalation or physical contact.
 
 
 [2]
 Occupational Safety and Health Act § 6(a), 29 U.S.C. § 655(a) (Supp.1974)
 
 
 [3]
 Budd was cited for a number of violations of safety standards promulgated by the Secretary. The Secretary proposed penalties for each infraction ranging from $6.00 to $45.00. After the Secretary issued a complaint, Budd responded before the hearing examiner and admitted to all the citations except those relating to protective footwear and the storage of acetylene cylinders. The Commission concluded that Budd had not complied with 29 C.F.R. § 1910.252(a) relating to the positioning of such acetylene cylinders. However, after receiving a letter allowing the company to continue mounting the cylinders at an angle 30 degrees above horizontal, Budd chose not to continue the contest relating to the acetylene cylinders
 
 
 [4]
 Chairman Moran joined the majority opinion with respect to allocating the cost of protective footwear, but dissented from the Commission's decision on the required positioning of acetylene cylinders
 
 
 [5]
 See footnote 3
 
 
 [6]
 See 29 U.S.C. § 661(i) (Supp.1974), which provides in part:
 The report of the hearing examiner shall become the final order of the Commission within thirty days after such report by the hearing examiner, unless within such period any Commission member has directed that such report shall be reviewed by the Commission.
 
 
 [7]
 See 29 C.F.R. § 2200.90(b), which provides:
 (b) The judge shall sign and date the decision. Upon issuance of the decision, jurisdiction shall rest solely in the Commission, and all motions, petitions and other pleadings filed subsequent to such issuance shall be addressed to the Commission.
 
 
 [8]
 See 29 U.S.C. § 660(a) (Supp.1974)
 
 
 [9]
 502 F.2d 946, 951 (3d Cir. 1974)
 
 
 [10]
 380 U.S. 1, 16, 85 S.Ct. 792, 801 (1965), quoting Unemployment Commission v. Aragon, 329 U.S. 143, 153, 67 S.Ct. 245, 91 L.Ed. 136 (1946) and Power Reactor Co. v. Electricians, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924 (1961)
 
 
 [11]
 Roy Bryant Cattle Co. v. United States, 463 F.2d 418, 420 (5th Cir. 1972). Accord, Udall, supra, at 16, 85 S.Ct. 792. See Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1970); United States v. Chicago, 400 U.S. 8, 91 S.Ct. 18, 27 L.Ed.2d 9 (1970); Ostheimer v. United States, 264 F.2d 789 (3d Cir. 1959)
 
 
 [12]
 Because the Commission and the Secretary both agree that 1910.132(a) does not impose on the employer the financial burden of the required safety shoes, we need not address the question whether the court should afford greater respect to the Commission's interpretation or to the Secretary's when the two are unable to agree as to the proper construction of a safety standard. See, e. g., Dale M. Madden Construction Co. v. Hodgson, 502 F.2d 278 (9th Cir. 1974); Brennan v. Southern Contractors Service, 492 F.2d 498 (5th Cir. 1974); Brennan v. Occupational Safety & Health Review Comm'sn (Gerosa, Inc.), 491 F.2d 1340 (2d Cir. 1974); Brennan v. Gilles & Cotting, Inc., 504 F.2d 1255 (4th Cir. 1974)
 
 
 [13]
 See Brennan v. Gilles & Cotting, Inc., 504 F.2d at 1262
 
 
 [14]
 See, e. g., Senate Subcommittee on Labor, Legislative History of the Occupational Safety and Health Act of 1970 (1971) at 146-47, 149, 462-651. Cf. Brennan v. Gilles & Cotting, Inc., 504 F.2d at 1262
 
 
 [15]
 29 U.S.C. § 661(a) (Supp.1974)
 
 
 [16]
 See Brennan v. Southern Contractors Service, 492 F.2d 498, 501 (5th Cir. 1974); Brennan v. Gilles & Cotting, Inc., 504 F.2d at 1261-62. But see Brennan v. Occupational Safety and Health Review Commission (Gerosa, Inc.), 491 F.2d 1340 (2d Cir. 1974)
 
 
 [17]
 29 U.S.C. §§ 668(a), 655(b)(3) (Supp.1974)
 
 
 [18]
 See, e. g., 33 U.S.C. § 941(a) (1970) (Longshoremen's and Harbor Workers' Compensation Act), 30 U.S.C. §§ 842, 877 (1971) (Federal Coal Mines Health and Safety Act)
 
 
 [19]
 29 U.S.C. § 201 et seq
 
 
 [20]
 See 29 U.S.C. § 651 (Supp.1974); S.Rep. 91-1282, 91st Cong., 2d Sess. (1970); Legislative History, supra, at 1420166, 297; U.S.Code Cong. & Adm.News, p. 5177 (1970); Brennan v. Southern Contractors Service, 492 F.2d at 501
 The Act was intended to obviate the catastrophic loss of wages which often accompanies industrial accidents. This purpose, however, is not, as the union argues, inconsistent with the employees paying for their own safety shoes, as a result of collective bargaining. The expense of purchasing safety shoes is spread among all the workers, while the loss of wages resulting from a job- related injury is often concentrated on the victim alone. Moreover, the cost of the shoes may be compensated by other items in the collective bargaining settlement.
 
 
 [21]
 The Commission stated, "Construing the standard as a whole, we think subpart (a) means that where personal equipment is necessary, the employer shall insure that it is used."
 
 
 [22]
 29 C.F.R. § 1910.132(b) provides:
 (b) Employee-owned equipment. Where employees provide their own protective equipment, the employer shall be responsible to assure its adequacy including proper maintenance, and sanitation of such equipment.
 
 
 [23]
 The union offers the following argument as justification for setting aside the Commission's decision: the wording of 1910.132(a) was taken verbatim from 41 C.F.R. § 50-204.7, a regulation promulgated under the Walsh-Healey Public Contractors Act (41 U.S.C. §§ 35, 38 (1965)); the latter regulation, the union continues, places the financial burden of such safety equipment on the employer; therefore, the union concludes, 1910.132(a) should be interpreted as imposing the cost on the employer. The union's position regarding 50-204.7 differs from Commissioner Cleary's interpretation of that regulation in his dissenting opinion. Neither the union nor Commissioner Cleary cites any authority for their respective interpretations. Aside from these considerations, however, the relationship between 50-204.7 and 1910.132 is a matter properly left to the Commission's resolution, and, in any event, does not provide a sufficient basis for this Court to conclude that the Commission's interpretation of 1910.132(a) is unreasonable
 
 
 [24]
 See, e. g., 29 C.F.R. §§ 1910.93(a)(d)(3), 1910.134(a). Cf. 29 C.F.R. § 1910.93g. It may also be noted, however, that the standard does not stipulate that the employer's sole duty is to make such equipment available for purchase, as do some other regulations issued by the Secretary under the Longshoremen's Act. See 29 C.F.R. §§ 1915.83(d), 1916.83(d), 1917.83(d)