**LUCAS COAL COMPANY et al., Petitioners,**

**v.**

**INTERIOR BOARD OF MINE OPERATIONS APPEALS et al., Respondents.**

No. 74–1813.

United States Court of Appeals, Third Circuit.

Argued June 10, 1975.

Decided Aug. 29, 1975.

Henry J. Wallace, Jr., Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for petitioners; Leo M. Stepanian, Brydon & Stepanian, Butler, Pa., of counsel.

Carla A. Hills, Asst. Atty. Gen., William Kanter, Michael Kimmel, Attys., Dept. of Justice, Washington, D. C., for respondents.

Before ADAMS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Petitioners, pursuant to § 106(a) of the Federal Coal Mine Health and Safety Act of 1969,[1] seek review of an order of the Secretary of the Interior acting through the Board of Mine Operations Appeals.[2] Three principal issues are presented by this appeal.

First, whether the Secretary of the Interior, acting through the Board of Mine Operations Appeals, erred in interpreting § 77.410 of the Secretary's mandatory

---

1. 30 U.S.C. § 816(a) (1970).

2. Appeals Division, Office of Hearings and Appeals, Department of the Interior.

safety standards so as to require bulldozers to be equipped with back-up alarms.[3]

Second, whether the Board erred in sustaining the issuance of a notice of violation in view of the unavailability of satisfactory equipment.

Third, whether the Board erred in deciding that certain violations of the mandatory safety standards were rendered moot by the abatement of the violations prior to hearing.

### A.

Petitioners are thirteen owners and operators of surface coal mines located in Butler, Clarion and Mercer Counties, Pennsylvania, whose mines are subject to the provisions of the Federal Coal Mine Health and Safety Act and to the mandatory safety standards[4] promulgated by the Secretary pursuant to the act. In 1971 and 1972 the Bureau of Mines of the Department of the Interior,[5] following the directives of § 104(b) of the Act,[6] caused to be issued and served on the petitioners twenty-nine notices of violations.

Section 104(b) requires a mine inspector finding a violation of the mandatory safety standards not creative of an imminent danger to issue to the mine operator a notice of such violation, fixing a time for its abatement. An inspector who, by contrast, finds a condition of imminent danger must order "forth-with," under section 104(a) of the Act,[7] that the operator withdraw all persons from the affected area.

Twenty-five of the notices received by the petitioners related to alleged violations of § 77.410 because of the failure of the mine operators to attach to mobile equipment then being used an alarm device which activated when the equipment moved in reverse. Nineteen of the twenty-five notices of violations of § 77.-410 had reference to bulldozers, and were served on nine of the petitioners. The other six notices of alleged violations of § 77.410 concerned mobile equipment other than bulldozers. As to the other types of mobile equipment, the question whether a violation of § 77.410 actually occurred is not raised in the petition. The remaining four of the twenty-nine notices of violations received by petitioners during the period in question set forth alleged violations of various of the Secretary's mandatory safety standards other than § 77.410. The fact of violation of the other safety standards also is not an issue before us.

As provided in § 105(a) of the Act,[8] petitioners filed applications for review by the Secretary of each of the twenty-nine notices both as to the fact of violation in the first instance, as well as to the reasonableness of the time fixed for abatement of the violations. An administrative law judge of the Hearings Division of the Office of Hearings and Ap-

---

**3.** 30 C.F.R. § 77.410 (1974), promulgated by the Secretary pursuant to § 101 of the Act, 30 U.S.C. § 811 (1970), provides:

§ 77.410 Mobile equipment; automatic warning devices.

Mobile equipment, such as trucks, forklifts, front-end loaders, tractors and graders, shall be equipped with an adequate automatic warning device which shall give an audible alarm when such equipment is put in reverse.

**4.** 30 U.S.C. § 801 et seq. (1970); 30 C.F.R. § 77–1 et seq. (1974).

**5.** Prior to 1973 the Bureau was charged with the task of enforcing the Secretary's safety regulations. This function is now administered by the Mining Enforcement and Safety Administration of the Department. 38 Fed. Reg. 18665–68 (1973).

**6.** 30 U.S.C. § 814(b) (1970).

**7.** 30 U.S.C. § 814(a) (1970).

**8.** 30 U.S.C. § 815(a)(1) (1970), which sets forth in part:

§ 815. Review by Secretary . . .

(a)(1) An operator issued an order pursuant to the provisions of section 814 of this title . . . may apply to the Secretary for review of the order . . . .. An operator issued a notice pursuant to section 814(b) or (i) of this title . . . may, if he believes that the period of time fixed in such notice for abatement of the violation is unreasonable, apply to the Secretary for review of the notice . . . ..

peals of the Department, after holding extensive prehearing conferences, consolidated the twenty-nine applications and conducted the consolidated hearings from June 20 to 22, 1972.

Prior to the hearings, twelve of the twenty-nine alleged violations had been abated: five of the nineteen notices of violations of § 77.410 applicable to bulldozers, three of the six notices of violations of § 77.410 applicable to mobile equipment other than bulldozers, and all four notices of violations of various mandatory safety standards other than the § 77.410 safety standard. An attorney for the Bureau of Mines stipulated with counsel for petitioners that the Bureau would not move to dismiss, on the ground of their abatement, the twelve abated violations.

The administrative law judge, who admitted the notices of abatement into the record, appears to have honored the stipulation. In any event, he proceeded to find against the petitioners in all but one of the twenty-nine applications for review,[9] and petitioners appealed to the Board of Mine Operations Appeals.

Following its earlier decision in *Reliable Coal Corp.,*[10] the Board held that the twelve applications for review of notices of abated violations should have been dismissed by the administrative law judge, that all review of notices under § 105 must relate to a determination of the reasonableness of the time fixed for abatement, and in the case of an abated violation, there remains no appropriate issue for review under § 105(a), notwithstanding the stipulation, since a stipulation cannot create a justiciable issue where none exists.[11]

The Board ratified the administrative law judge's disposition of the remaining seventeen applications, including the de-

termination that bulldozers are mobile equipment subject to the requirements of § 77.410. Petitioners appealed, and we affirm.

## B.

■ The ruling that § 77.410 includes bulldozers in its coverage constitutes an interpretation of an administrative regulation that may not be set aside unless such ruling is plainly erroneous or inconsistent with the regulations.[12] Courts are obliged to accord great deference to an administrative agency's construction of the language of a statute which it administers and, even more clearly, the agency's interpretation of regulations it has drafted.[13] An agency's explication of its regulation if reasonable, therefore, is controlling despite the existence of other interpretations that may seem even more reasonable.[14]

Petitioners contend that the "unambiguous" wording of § 77.410 excludes bulldozers from its coverage. They maintain that bulldozers are the most common piece of equipment used by strip miners and that the several illustrative types of mobile equipment specified in § 77.410, which is a safety standard directed to strip mining, exclude bulldozers. Accordingly, they claim, bulldozers were intentionally eliminated from the section's coverage. In addition, petitioners contend that bulldozers may be distinguished from the equipment listed in § 77.410 in that bulldozers are heavier and move more slowly. Petitioners state that the administrative law judge based his decision applying § 77.410 to bulldozers on an erroneous finding that bulldozers are a type of tractor and tractors are, by way of example, one of the kinds of equipment referred to in § 77.410.

---

9. Decision and order of November 19, 1973.

10. 1 IBMA 50, 1971–1973 OSHD ¶¶ 20,515, 20,518 (1971).

11. Opinion and order of July 16, 1974.

12. *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965).

13. *Id.* at 16, 85 S.Ct. 792; *Budd Co. v. Occupational Safety and Health Review Comm'n,* 513 F.2d 201, 204 (3d Cir. 1975).

14. *Budd Co. v. Occupational Safety and Health Review Comm'n,* 513 F.2d 201, 205 (3d Cir. 1975).

Petitioners, however, cannot deny that bulldozers are "mobile equipment" to which the section is generally applicable. The five examples set forth in § 77.410, and preceded by the words "such as," are plainly not all-inclusive as to the section's coverage. Therefore the administrator's interpretation of § 77.410 must govern what other mobile equipment will be subject to its requirements.

The size, weight and velocity of bulldozers and their bearing on the particular safety hazard that § 77.410 was intended to correct are matters primarily for the expertise of the Board. Petitioners' contention that bulldozers are not similar to the listed equipment is lacking in merit since, as petitioners admit, standard dictionaries commonly define bulldozers as a type of tractor, and a tractor is one of the listed items of equipment illustrating the type of mobile equipment covered by § 77.410. The Bureau's *A Dictionary of Mining, Mineral and Related Terms,* 1968 edition, also defines bulldozers generally as tractors. The decision that a bulldozer is included in the class of equipment covered by § 77.410 is neither inconsistent with the language of the regulation nor with its safety purpose. Since we cannot say that the Board's interpretation of § 77.410 is unreasonable, we may not set it aside.

Petitioners also maintain that a reasonable interpretation of § 77.410 would not include bulldozers in its coverage because, they claim, the view by a bulldozer operator of the area behind the vehicle is not obstructed. In this regard petitioners rely on a 1971 coal mine inspection manual providing that certain vehicles, such as automobiles and jeeps, need not be equipped with a warning device required by § 77.410. They also rely on an Occupational Safety and Health Administration regulation [15] providing that certain earth-moving equipment which—in contrast to automobiles and jeeps—have an obstructed view to the rear be equipped with a reverse signal alarm comparable to the alarm required by § 77.410.

We need only say that there is nothing in § 77.410 which limits its coverage to vehicles with an obstructed view to the rear. Furthermore, a directive to the effect that vehicles such as automobiles and jeeps are not encompassed within the "mobile equipment" covered by § 77.410 unless their view to the rear is obstructed seems wholly consistent with the Board's interpretation of the section challenged by petitioners. Automobiles and jeeps are light-weight vehicles in a class that is distinct from mobile equipment such as trucks, tractors and graders included in § 77.410.

Even if we could agree, which we cannot, that the only reasonable interpretation of § 77.410 is that it be applied exclusively to vehicles with an obstructed view to the rear, there is evidence in the record that the operator of a bulldozer does not have a completely clear view to the rear.

C.

Petitioners argue that the Board is bound by a prior ruling in Buffalo Mining Co.[16] that unavailability of equipment that makes compliance with a safety standard impossible prohibits issuance of a notice of violation. However, there was no demonstration that back-up alarms were not available; instead petitioners contend only that *"adequate"* back-up alarms were not available. "Adequate" is a word that appears in § 77.410.

As previously mentioned, five of the nineteen notices of violations of § 77.410 pertaining to bulldozers were abated and notices of satisfactory abatement of them were issued to the respective petitioners before the hearings conducted by the administrative law judge began. This fact indicates that back-up alarms sufficient to satisfy the agency were available. *Buffalo Mining Co.,* the case relied on by petitioners, dealt with

---

**15.** 29 C.F.R. § 1926.602(a)(9)(ii) (1974).

**16.** 2 IBMA 226, 1973–1974 OSHD ¶ 16,618 (1973).

unavailable equipment, not with available but arguably unsatisfactory equipment. The word "adequate" in § 77.410 would reasonably seem to refer to the petitioners' burden to comply adequately with the section's requirements. Notices of abatement issued as to five of the violations certainly constituted evidence of such compliance.

■ Any difficulty the petitioners have experienced in dealing with the mechanism mandated by § 77.410 must be weighed against the safety hazard which the requirement is intended to correct. This, again, is an area where the courts must defer to the expert judgment of the administrators of the Act and the regulations promulgated under it. We cannot, on this ground or on any of the grounds advanced by petitioners, say that the Board's interpretation of § 77.410 is neither congruent with the regulation or an unreasonable interpretation of it.[17] We accordingly affirm the Board's decision interpreting § 77.410 to include bulldozers and to apply so long as there are devices available sufficient to satisfy the agency.

### D.

Our discussion in parts B and C above disposes of nineteen of the twenty-nine violations under review pertaining to the Board's decision that § 77.410 is applicable to bulldozers. Of the remaining ten alleged violations, three were not abated prior to the time of the Board's decision, but petitioners raise no issue before us as to those three violations. However, as to the final seven notices of violations which were concededly abated by petitioners and on that ground dismissed by the Board, petitioners question the correctness of the Board's ruling that these infractions were rendered moot by their abatement.

■ Petitioners would appear to acknowledge that ordinarily an abatement would eliminate a "case or controversy" between the parties, and thus render these matters moot. But they maintain that under the doctrine of *Southern Pacific Terminal Co.*[18] there is an exception here. Under that doctrine, short-term orders capable of repetition, yet evading review are not considered dismissable on the grounds of mootness.

In considering the contention by petitioners that the doctrine of *Southern Pacific Terminal Co.,* is apposite here, it is necessary to review the terms of the Act. The Act clearly contains a number of provisions for review of administrative action taken under its authority against mine operators. Thus, section 109 [19] provides that all violations of mandatory safety standards require the imposition of a civil penalty. The amount of the penalty is determined after a decision by the Secretary that a violation did in fact occur. A failure by an affected mine operator to pay the penalty requires the Secretary to file a petition for enforcement in a district court which then considers *de novo* all relevant issues not previously considered by a court of appeals under section 106.[20] And one of the issues would be the fact of violation.

In addition, section 105(a)(1) [21] permits the mine operator to apply for administrative review of an order of withdrawal [22] immediately after its is-

---

17. *See* footnotes 13 & 14 *supra* and accompanying text.

18. *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). Petitioners also cite as supporting cases: *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974); *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Moore v. Ogilvie,* 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969); *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968);

*Ginsberg v. New York,* 390 U.S. 629, 88 S.Ct. 1274, 20 L.Ed.2d 195 (1968).

19. 30 U.S.C. § 819 (1970).

20. 30 U.S.C. § 816 (1970).

21. *See* footnote 8.

22. An order of withdrawal is an order requiring the mine operator to withdraw all persons, with certain necessary exceptions, from the violation area until a determination that the violation has been abated. 30 U.S.C. § 814(b), (d) (1970).

suance, and section 106 provides for judicial review of the Secretary's decision regarding the fact of violation that caused the order of withdrawal to be issued. Section 104(b)[23] states that where an operator has failed to abate a violation covered by a notice in the time allowed and the inspector "finds" that the time for abatement should not be extended, the inspector shall issue an order of withdrawal. And in the latter event, the full review permitted orders of withdrawal under section 105 is available.

■ Given these avenues of review available under the Act, the Board's interpretation of section 105 as limiting review of a notice of violation to those issues necessary to the determination of the reasonableness of the time allowed for abatement is permissible despite the *Southern Pacific* exception. This is so since the Supreme Court's concern in *Southern Pacific* was the unavailability of any review at all of certain agency action.[24] It follows that the Board may consequently determine that an abatement of a notice of violation renders the notice moot.

This result is consonant with the Board's consideration of the fact of violation itself when reviewing unabated notices of violation. The Board reasoned that the fact of violation is an issue necessary to the determination of the reasonableness of the time fixed for abatement, stating "any time for abatement is an unreasonable time if no violation exists."[25] Thus, the fact of violation is subject to section 105 review where the violation remains unabated. In contrast, where a violation has been abated, the question of the reasonableness of the time fixed for abatement, with all its subsidiary issues, becomes academic.[26] Review would be available through a challenge to the mandatory civil penalty assessed under § 109.

The Board's interpretation here is a particularly acceptable one in view of the safety objectives of the Act, the obvious desirability of encouraging prompt abatement of violations while still allowing ultimate review, and the necessity of limiting review in order to permit more expeditious consideration of serious grievances.[27] Accordingly, we conclude that the ruling of the Board that the violations abated are moot is not erroneous.

The order of the Board will be affirmed.

---

**23.** 30 U.S.C. § 814(b) (1970).

**24.** It is conceivable that some factual configuration would bring this case within the *Southern Pacific* rule. No such facts have been brought to our attention in this case, however, and we therefore need not discuss that possibility.

**25.** *Freeman Coal Corp.,* 1 IBMA 1, 1971–1973 OSHD ¶ 15,367 (1970).

**26.** We consider that the Fourth Circuit in *Reliable Coal Corp. v. Morton,* 478 F.2d 257, 258 n. 1 (4th Cir. 1973), although it did not explicate the underlying reasoning, reached the same result. Petitioners' reliance on *Eastern*

*Assoc. Coal Corp. v. Interior Board of Mine Operations Appeals,* 491 F.2d 277 (4th Cir. 1974), to arrive at a contrary conclusion would appear to be inapposite, since that case dealt with review of a withdrawal order that had been abated, and not with review of a notice of violation.

**27.** *Budd Co. v. Occupational Safety and Health Rev. Comm'n,* 513 F.2d 201 (3d Cir. 1975). "[T]he agency's interpretation of a regulation 'is deemed of controlling weight as long as it is one of several reasonable interpretations . . . .'" *Id.* at 205 (quoting *Roy Bryant Cattle Co. v. United States,* 463 F.2d 418, 420 (5th Cir. 1972)).