Peter J. BRENNAN, Secretary of Labor, United States Department of Labor, Appellant in No. 76–2014,

v.

WESTERN UNION TELEGRAPH CO., Appellant in No. 76–2015.

Nos. 76–2014 and 76–2015.

United States Court of Appeals, Third Circuit.

Argued March 31, 1977.

Decided Aug. 12, 1977.

478

Thomas M. Healy (Peter J. Monaghan and Herbert G. Telsey, on the brief), Upper Saddle River, N. J., for appellant-cross-appellee.

William J. Kilberg, Sol. of Labor, Carin Ann Clauss, Associate Sol., Lois G. Williams, Atty., U. S. Dept. of Labor, Washington, D. C., Francis V. LaRuffa, Regional Sol., U. S. Dept. of Labor, New York City, for appellee-cross-appellant.

Gerard C. Smetana, Lawrence D. Ehrlich, Thomas Canafax, Jr., Borovsky, Smetana, Ehrlich & Kronenberg, Washington, D. C., Counsel for the Chamber of Commerce of U.S.A., as amicus curiae.

Lawrence B. Kraus, Gen. Counsel, Richard O'Brecht, Labor Relations Counsel, Chamber of Commerce of the U.S.A., Washington, D. C., as amicus curiae.

Before SEITZ, Chief Judge, and ALDISERT and HUNTER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

This case raises the question of whether employees normally exempt from the maximum hours provisions of the Fair Labor Standards Act because they function in executive, administrative or professional capacities are subject to these provisions during a strike period in which they take over the functions normally performed by rank and file employees. The district court held that the executive employees are exempt, but concluded that the administrative and professional employees who work more than 40 hours per week must be paid one and one-half times their regular rates of pay. The defendant, Western Union Telegraph Company, appeals the provision of the district court's judgment which directs it to pay overtime to the administrative and professional employees. The Secretary of Labor, who is the plaintiff, cross-appeals the court's conclusion that the executive employees are subject to exemption from the maximum hours provisions of the FLSA.

The case arises on a stipulated set of facts, the relevant provisions of which are as follows. Western Union, the only domestic telegraph company serving the continental United States, engages in the business of providing telegraphic and related written communications services to the general public, private industry, and various agencies of federal, state, and local governments. From June 1, 1971 through July 27, 1971, 14,715 of the company's employees represented by the United Telegraph Workers were on strike against the company. From June 1, 1971 through September 12, 1971, 2,947 employees represented by the Communications Workers of America also went out on strike. These two groups of "striking employees constituted the entire rank and file work force of Western Union personnel engaged in operational, technical and clerical functions and in the maintenance of systems and equipment."

Western Union, however, continued to provide some of its communications services during the strike—chiefly those "which were essential to the domestic defense communication services and to national defense." The Stipulation states that "[t]he only manner in which Western Union was able to provide the foregoing services during the strike was by assigning [approximately 2,100] managerial employees to perform the clerical, technical, operational, and maintenance functions necessary thereto, as replacements for the striking employees who normally performed such tasks," and that Western Union could not have provid-

ed the services in question by obtaining replacements for the striking employees from other sources because of "the technical skill and familiarity with the operations required," and in the case of one service provided to the Department of Defense, because "of the requirement for high level national security clearance." The parties have also stipulated that "[a] substantial number [of the managerial employees. on strike duty], but not all, devoted more than 50% of their time during the period of the strike to the clerical, technical, maintenance and operational tasks normally performed by the striking employees."

## I.

The "judgment" appealed from states that the district court has:

ORDERED, ADJUDGED AND DE-CREED that Defendant Western Union Telegraph Company, its officers, agents, servants, employees and those persons in active concert or participation with them who received actual notice of this order by actual service or otherwise be and they hereby are enjoined and restrained from violating the provisions of sections 15(a)(2) [1] of the Fair Labor Standards Act of 1938, as amended (52 Stat. 1060, 29 U.S.C. 201–219), hereinafter called the Act.

This prohibition does not include employees classified as "Executive" employees within the meaning of the Act and Regulations, for the reasons stated in the Court's Memorandum Opinion.

The court also ordered that:

(a) Defendant and Plaintiff shall proceed promptly to stipulate to the amounts owed to Defendant's "Administrative" and "Professional" employees who served as replacements for the striking employees during the period from June 1, 1971 through September 12, 1971 which have been withheld from them in violation of section 7(a) [2] of the Act, with interest at

six per cent per annum from the dates the amounts were earned.

(b) If a stipulation conforming to (a) above has not been executed on or before June 30, 1976, either party may apply to the Court for an order directing the manner in which the foregoing amounts are to be determined under the Court's supervision.

(c) No later than 30 days after the aforesaid stipulation or other determination of amounts so withheld by Defendant shall have been filed, all such amounts, less deductions required by law, shall be remitted by Defendant to Plaintiff, and Plaintiff shall distribute to the persons named in the supplemental order or to their surviving heir or heirs if that is necessary, all such amounts, and any money not so distributed by the Plaintiff within three years because of Plaintiff's inability to locate the proper person, or because of such person's refusal to accept such money, such money shall be deposited with the Clerk of the District Court who shall forthwith deposit such money with the Treasury of the United States pursuant to 28 U.S.C. Section 2041.

■ The parties assert that this appeal lies under § 1291 because the above order constitutes a final judgment. We conclude, however, that the appeal shall be entertained under § 1292(a)(1), since we read the above order to enjoin future violations of the FLSA, as well as setting the framework for the payment of the amounts which Western Union failed to give administrative and professional employees who performed overtime strike duty in 1971. We have serious doubts as to whether we would have jurisdiction of this case if the order had merely restrained Western Union from withholding overtime compensation due for the period of the 1971 strike. First, the provisions of the district court's order which concern the 1971 strike leave open important questions pertaining to the calculation

---

1. Section 15(a)(2) of the FLSA, forbids, inter alia, the violation of the maximum hours provisions of the Act.

2. Section 7(a) of the FLSA contains the basic requirement that an employer pay time and one-half for overtime.

of the amount of overtime which the company must pay—as we shall discuss further below. The order thus cannot be deemed to constitute a final judgment for purposes of § 1291. *See* 9 Moore's Federal Practice Para. 110.08[1]. Moreover, even though 29 U.S.C. § 217,[3] the statute giving the district court jurisdiction of this case, appears to refer to an order against "withholding of . . . overtime compensation found by the court to be due to employees" as an injunction, we question whether an order to pay money due for past transactions amounts to an injunction for purposes of appeal under § 1292(a)(1). *See United Bonding Insurance Co. v. Stein,* 410 F.2d 483 (3d Cir. 1969).

In any event, we need not decide whether we would have jurisdiction of the case if the district court's order had merely restrained Western Union from withholding overtime compensation due for the period of the 1971 strike. We say this in view of the fact that we must consider the same issues as to the order's prospective effect as we would face with respect to the 1971 strike, and the fact that our conclusions on these issues will be binding on the district court in the future proceedings contemplated in the court's order as to the calculation of the amounts due for the period of the 1971 strike. However, the fact that the district court's order does not precisely specify Western Union's obligations under the maximum hours provisions of the FLSA—either with respect to the 1971 strike or the future—does affect the scope of the issues we may consider on this appeal. We may infer from the district court's order only that: 1) administrative and professional employees who perform

strike duty are not exempt from the FLSA solely because of their usual status as administrators and professionals 2) executive employees are subject to exemption when performing strike duty, at least in certain circumstances. It is the propriety of these decisions which we shall consider.

## II.

The initial question before us is whether managerial[4] employees who perform strike duty remain exempt from the maximum hours provisions of the FLSA because they continue to be "employed in a bona fide executive, administrative, or professional capacity . . . (as such terms are defined and delimited from time to time by regulations of the Secretary; subject to the provisions of the Administrative Procedure Act . . .)."

Western Union first contends that there is no sufficient statutory basis for obligatory payment of overtime to managerial employees who perform strike duty. Some aspects of the legislative history tend to support this argument. In his May 24, 1937, letter urging Congress to consider the FLSA, President Roosevelt said:

> The overwhelming majority of our population earns its daily bread either in agriculture or in industry. One-third of our population, the overwhelming majority of which is in agriculture or industry, is ill-nourished, ill-clad, and ill-housed . . . . Our Nation, so richly endowed with natural resources and with a capable and industrious population, should be able to devise ways and means of insuring to all our able-bodied working men and women a fair day's pay for a fair day's work. A self-supporting and self-respect-

---

3. Injunction proceedings.

The district courts, together with the United States District Court for the District of the Canal Zone, the District Court of the Virgin Islands, and the District Court of Guam shall have jurisdiction, for cause shown, to restrain violations of section 15 of the Act, including in the case of violations of section 15(a)(2) of the Act the restraint of any withholding of payment of minimum wages or overtime compensation found by the court to be due to employees under this chapter (ex-

cept sums which employees are barred from recovering, at the time of the commencement of the action to restrain the violations, by virtue of the provisions of section 255 of this title.)

4. We shall use the term "managerial" employees to mean employees who, apart from the strike context, usually qualify for exemption from the maximum hours provisions because they function "in a bona fide executive, administrative, or professional capacity."

ing democracy can plead no justification for the existence of child labor, no economic reason for chiseling workers' wages or stretching workers' hours . . . . As we move resolutely to extend the frontiers of social progress, we must be guided by practical reason and not by barren formula. We must ever bear in mind that our objective is to improve and not to impair the standard of living of those who are now undernourished, poorly clad, and ill-housed.[5]

The FLSA itself contains the finding that: the existence, in industries engaged in commerce or in the production of goods for commerce, of labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers (1) causes commerce and the channels and instrumentalities of commerce to be used to spread and perpetuate such labor conditions among the workers of the several States; (2) burdens commerce and the free flow of goods in commerce; (3) constitutes an unfair method of competition in commerce; (4) leads to labor disputes burdening and obstructing commerce and the free flow of goods in commerce; and (5) interferes with the orderly and fair marketing of goods in commerce.[6]

Moreover, in *United States v. Darby,* 312 U.S. 100, 109–110, 61 S.Ct. 451, 455, 85 L.Ed. 609, the Supreme Court said that the "purpose" of the FLSA:

. . . is to exclude from interstate commerce goods produced for the commerce and to prevent their production for interstate commerce, under conditions detrimental to the maintenance of the minimum standards of living necessary for health and general well-being; and to prevent the use of interstate commerce as the means of competition in the distribution of goods so produced, and as the means of spreading and perpetuating

such substandard labor conditions among the workers of the several states.

Thus, some aspects of the legislative history tend to support the contention that the maximum hours provisions were intended to cover the rank and file working man, and not managerial personnel who, for a few months, and at their regular salaries, perform strike duty, with every expectation of returning to their regular duties as soon as the strike is over.

But the argument that Congress could not have intended the employees in question to be subject to the FLSA cuts too far. It is clear that the maximum hours provisions would apply to a skilled tradesman earning substantial sums of money each week—hardly the sort of "ill-nourished, ill-clad, and ill-housed" individual that one might think Congress envisioned. If one looks *solely* to the weeks in which Western Union's managerial personnel perform extensive strike duty, one must consider them indistinguishable from highly paid working men.[7] On the other hand, if the FLSA mandates that one look to a broader time frame than the weeks in which the managerial personnel perform strike duty, it is possible that these employees should be considered exempt—either on the theory that it is a managerial function to perform strike duty, or on the theory that managerial personnel basically function in a managerial capacity over the long haul, despite any given strike interlude. In sum, any contention that managerial employees should be exempt from the maximum hours provisions must focus on the question of what time period one must look to in determining whether the exemption applies.

The Secretary of Labor argues that the FLSA does not require that one look to what managerial employees do before and after a strike, and that, in fact, each workweek may be viewed separately under the Act. Two factors lead us to conclude that this is an acceptable position. First 29 U.S.C. § 207(a)(1) says that:

---

5. 81 Cong.Rec. 4983–4.

6. 29 U.S.C. § 202(a).

7. We agree with the Secretary's contention that the Act does not require a jurisprudence of labels. Thus, the fact that salaries are labelled "managerial" has no necessary consequence.

Except as otherwise provided in this section, no employer shall employ any of his employees who in *any* workweek is engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. (emphasis added)

Thus, the statute speaks of *any* workweek. Moreover, exemptions from the coverage of the FLSA are to be narrowly construed. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 391–2, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960).

■■■ Second, we must adhere to the rule that an agency's interpretation of its governing statute is to be accorded deference. *See Batterton v. Francis,* —— U.S. ——, ——, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977). As the Supreme Court stated in *Overnight Motor Co. v. Missel,* 316 U.S. 572, 577–8, 62 S.Ct. 1216, 1220, 86 L.Ed. 1682:

. . . the purpose of the Act was not limited to a scheme to raise substandard wages first by a minimum wage and then by increased pay for overtime work. Of course, this was one effect of the time and a half provision, but another and an intended effect was to require extra pay for overtime work by those covered by the Act even though their hourly wages exceeded the statutory minimum. The provision of [§ 207(a)] requiring this extra pay for overtime is clear and unambiguous. By this requirement, although overtime was not flatly prohibited, financial pressure was applied to spread employment to avoid the extra wage and *workers were assured additional pay to compensate them for the burden of a workweek beyond the hours fixed in the Act.* (emphasis added)

We believe the Secretary to be within the scope of his discretion in concluding that the policy of compensating workers for a burdensome workweek applies with respect to each distinct workweek.[8]

■■■ Western Union contends that extending the coverage of the maximum hours provisions of the FLSA to managerial employees on strike duty would bring the Act into conflict with the dominant federal law of labor relations, because it would constitute an artificial alteration of the balance of economic power in the collective bargaining process.[9] The parties have cited us to cases involving the validity of state laws authorizing the payment of unemployment compensation benefits to strikers. In *Super Tire Engineering Co. v. McCorkle,* 550 F.2d 903 (3d Cir. 1977), we concluded on the basis of the Supreme Court's dismissal for want of a substantial federal question in *Kimbell, Inc. v. Employment Security Commission,* 429 U.S. 804, 97 S.Ct. 36, 50 L.Ed.2d 64 (1976), that payment of unemployment compensation to strikers does not constitute an impermissible interference with federal labor policy. The alleged interference with federal labor policy as declared in the National Labor Relations Act is even less compelling in the present case. First, Western Union's argument raises the issue of how two federal statutes—the FLSA and the NLRA—are to be reconciled, rather than a question of whether state law has been preempted. Second, in contrast with the payment of unemployment compensation, the benefits of the maximum hours provisions of the FLSA accrue to individuals who have sustained the burden of a long workweek rather than to the strikers themselves. In short, this is not a subsidy to individuals who are in need of assistance by virtue of the very fact that they are out on strike, but a measure taken, in part, to redress the burden of long working hours. We would require stronger evidence of Congressional intent before we concluded that the policies of the FLSA may not be put into effect because, in cases where an employer cannot readily find re-

---

8. To the extent that our conclusion differs from that of the court in *McReynolds v. Pocahontas Corp.,* 192 F.2d 301 (4th Cir. 1951), we must disagree with that decision.

9. *See H. K. Porter Co. v. N. L. R. B.,* 397 U.S. 99, 90 S.Ct. 821, 25 L.Ed.2d 146 (1970).

placements for its striking rank and file employees, these policies happen to have an effect on the economic weapons the employer may bring to bear against its striking employees.

Western Union has also argued that even assuming the "bona fide executive, administrative, or professional capacity" exemption could be applied to managerial employees on strike duty, the Secretary has failed to so define it. We note at the outset that Western Union must show that the Secretary's regulations as to this exemption *do* exempt managerial employees who perform strike duty. If the company fails to make such a showing, it will be subject to the Act's broad requirement that an employer pay overtime to "any" employee who performs over forty hours of work per workweek.

While the Secretary's regulations as to executive, administrative, and professional employees differ in some respects, their basic structure is similar. The statutory phrase "employee employed in a bona fide executive . . . capacity" has been defined to mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 per cent . . . of his hours in the workweek to activities which are not directly and closely related to the perform-

ance of the work described in paragraphs (a) through (d) of this section . . .

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week . . . exclusive of board, lodging, or other facilities: *Provided,* That an employee who is compensated on a salary basis at a rate of not less than $250 per week . . . exclusive of board, lodging, or other facilities, and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section. 29 C.F.R. § 541.1.

We must agree with the Secretary's argument that this regulation is not to be read to universally exclude all managerial personnel who perform strike duty. As we said in *Lucas Coal Co. v. Interior Board of Mine Operations Appeals,* 3 Cir., 522 F.2d 581 at 584: "[a]n agency's explication of its regulation if reasonable . . . is controlling despite the existence of other interpretations that may seem even more reasonable." We note, however, that we hold no more than that managerial personnel who perform strike duty are not necessarily exempt. As we have observed, the "judgment" entered by the district court leaves open important questions involving the application of the regulations. For example, the district court has not yet specifically decided if, under the regulations, the determination of whether an employee is "employed in a bona fide executive . . . capacity" is to be made with respect to each week separately or with respect to a broader period of time. Since questions involving such detailed application of the regulations are not within the purview of the court's order enjoining Western Union from future violations of the maximum hours provisions of the FLSA, we do not consider them.[10]

---

10. Amicus curiae has argued that even if the determination of whether employees earning

$155 per week are exempt is to be made with respect to each separate workweek, this is not

## III.

Apart from the exemption for employees "employed in a bona fide executive, administrative, or professional capacity," which finds explicit basis in the Act, the Secretary has also promulgated regulations which exempt work done by bona fide executives under "certain occasional emergency conditions," including "conditions beyond control . . . which threaten . . . a cessation of operations." 29 C.F.R. § 541.109. The district court concluded that Western Union's *executive* employees who performed strike duty are subject to exemption under this regulation, and the Secretary has cross-appealed the district court's decision. We need not discuss the merits of this issue, however, since Western Union, in response to a specific written inquiry propounded by the Court after oral argument of this case, disclaimed reliance on the "Emergencies" regulation—arguing, in fact, that it does *not* apply, despite the fact that the company apparently relied on this regulation below. We express no view as to the relevance of the regulation, but conclude simply that we shall not give Western Union the benefit of an exemption which it explicitly repudiates. We say this despite the fact that the Secretary has conceded that, for a period of up to one week after the strike began, the strike "created an 'emergency' within our guidelines." It is for the company, not the Secretary, to invoke the benefits which any exemption in the statute or regulations may offer.

In sum, Western Union's executive employees are not to be treated differently from its administrative and professional employees because of the "Emergencies" regulation. Nor is there any reason to treat them differently for purposes of the "bona fide executive, administrative, or professional capacity" exemption—at least until such time as the district court has considered the detailed application of the regulations dealing with this exemption.

The judgment of the district court will be reversed as to the Secretary's cross-appeal. The judgment will be affirmed on Western Union's appeal. Costs are taxed against Western Union Telegraph Co.

JAMES HUNTER, III, Circuit Judge, concurring:

I concur with the majority that the overtime provisions of the Fair Labor Standards Act (FLSA) permit the Secretary of Labor to extend coverage to some "executive," "administrative," and "professional" employees performing the work of strikers who themselves would be covered by the Act. The district court at this point in the case properly enjoined future violations of the FLSA by Western Union and created a framework for payments of amounts owed to employees for work during the 1971 strike.

This court has not decided that all such managerial employees are non-exempt from the Act. In addition to the calculation of how much back pay is due, the district court must now also decide the still open question of precisely which employees are covered by the overtime provisions. That issue will involve a careful review of the applicable regulations.

I believe the district court might possibly be misled by the majority's statement that the Secretary is within his discretion in using the "workweek" in determining the classification of employees. Although that standard might properly be applied to some managerial employees, it should not affect those exempted by the final provisos in the sections defining executive, administrative and professional personnel.[1]

First, the broader language of those provisos is ill-fitted to definition on a week-to-

true with respect to those earning $250 per week or more, since the chief applicable test is that the employee's "primary duty" is to perform managerial duties, and "primary function" is to be measured over a period of time broader than each workweek. We emphasize that we have held merely that with a strike of some length, managerial personnel will lose their exemption. We need not, given the generality of the district court's order, and do not discuss questions involving the detailed application of the regulations.

1. 29 C.F.R. §§ 541.1–541.3 (1976). The current proviso pertaining to executives, *id.* § 541.1, is

week basis. The court need not accept an interpretation by the Secretary which is plainly inconsistent with the regulations. *See Bowles v. Seminole Rock Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). Second, to classify highly paid employees on the basis of work performed during a given time-frame rather than on the basis of primary duties would compound the difficulty of reconciling the Secretary's interpretation of the regulations with the statutory exemption in the FLSA of those employed in a "bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213 (1970).

---

typical of the language of all three sections of the regulations:

> *Provided,* That an employee who is compensated on a salary basis at a rate of not less than $250 per week . . . and whose

primary duty consists of the management of the enterprise in which he is employed . . . shall be deemed to meet all of the requirements of this section.