**The DOW CHEMICAL COMPANY and the Chamber of Commerce of the United States of America, Plaintiffs,**

v.

**S. Martin TAYLOR, Director of the Michigan Employment Security Commission, et al., Defendants,**

and

**United Steelworkers of America, AFL–CIO–CLC, Intervenor.**

Civ. A. No. 38644.

United States District Court, E. D. Michigan, S. D.

Feb. 10, 1977.

Thomas W. Misner, Dow Chemical Co.
Legal Dept., Midland, Mich., Lawrence M.

Cohen, Jeffrey S. Goldman, Lederer, Fox & Grove, Chicago, Ill., for The Dow Chemical Co.

Gerard C. Smetana, Thomas Canafax, Jr., Borovsky, Smetana, Ehrlich & Kronenberg, Chicago, Ill., Lawrence B. Kraus, Gen. Counsel, Richard O'Brecht, Director of Labor Law Section, Chamber of Commerce of United States, Washington, D. C., Robert J. Finkel, Levin, Levin, Garvett & Dill, Detroit, Mich., for Chamber of Commerce of United States.

Frank J. Kelley, Atty. Gen. of Michigan by Edward J. Setlock, Asst. Atty. Gen., Detroit, Mich., for S. Martin Taylor, and others.

Carl B. Frankel, Asst. Gen. Counsel, Pittsburgh, Pa., Allen J. Kovinsky, Kasoff, Young, Gottesman, Kovinsky, Friedman & Walkon, Southfield, Mich., for intervenors; Bernard Kleiman, Chicago, Ill., Jordan Rossen, Associate Gen. Counsel, International Union, UAW, Detroit, Mich., of counsel.

## OPINION RE MOTION FOR SUMMARY JUDGMENT

FEIKENS, District Judge.

Plaintiff, The Dow Chemical Company, initiated this action for declaratory and injunctive relief against defendants, the Director of the Michigan Employment Security Commission and the United Steelworkers of America.[1] Dow challenges the payment of unemployment compensation by Michigan to strikers; specifically, Dow seeks to prevent payment to employees who engaged in a strike against Dow in 1972.

Michigan permits strikers to get unemployment compensation if they are laid off after obtaining bona fide interim employment. M.C.L.A. § 421.29(8); *Great Lakes Steel Corp. v. Employment Security Commission,* 381 Mich. 249, 161 N.W.2d 14

(1968).[2] Dow claims that payment by the State to strikers is precluded by the doctrine of federal labor law preemption which protects the right of employers and employees to bargain collectively, free from State interference. Additionally, Dow argues that the State's payment of unemployment compensation to strikers frustrates the operation of the Labor Management Relations Act of 1947 (29 U.S.C. § 151 *et seq.*) in violation of the Supremacy Clause of Article VI of the United States Constitution.

The case has been on this court's docket since it was first filed in 1972. A defense motion to dismiss was denied by the court in November, 1972. *Dow Chemical Co. v. Taylor,* 57 F.R.D. 105 (E.D.Mich.1972). The court stated at that time:

> More importantly, this court views the issue of supremacy as a mixed question of law and fact. This court does not believe, as defendants and intervenors suggest, that congressional inaction or failure to pass particular amendments to unemployment tax laws results in a definitive statement of congressional intent. Moreover, whether in fact the payment of unemployment compensation infringes an employer's collective bargaining right cannot be decided by this court on the pleadings submitted.

*Dow Chemical Co. v. Taylor,* 57 F.R.D. 105, 108 (E.D.Mich.1972).

The Steelworkers now bring a motion for summary judgment claiming that the United States Supreme Court's recent dismissal of an appeal from the Supreme Court of New Mexico is dispositive of this case. *Kimbell v. Employment Security Commission of New Mexico,* 429 U.S. 804, 97 S.Ct. 36, 50 L.Ed.2d 64 (1976).

While the United States Supreme Court dismissal of the *Kimbell* appeal "for

1. The Chamber of Commerce of the United States, formerly a party plaintiff, is now an amicus curiae. *See* Memorandum Opinion dated June 17, 1976.

2. In 1974, the Michigan statute was amended to define "bona fide interim employment" as being of at least two weeks duration at wages equaling the claimants potential unemployment

benefits. The Employment Security Appeal Board held in 1975 that this meaning was intended by the statute prior to the 1974 amendment, *Bridgewater v. The Dow Chemical Co.,* Appeal Docket No. B 72–5295–43101. This issue has not yet been finally addressed by the Michigan state courts.

want of a substantial federal question" is a decision on the merits and, as such, it is binding on this court, *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975), *Whitlow v. Hodges,* 539 F.2d 582 (6th Cir. 1976), *cert. denied,* —— U.S. ——, 97 S.Ct. 654, 50 L.Ed.2d 632 (1976), the United States Supreme Court noted in *Hicks* (n. 14) that a summary dismissal is binding only as to those issues which were properly presented to the Supreme Court and declared by it to be without substance. It is thus incumbent on this court to "ascertain the reach and content" of the summary dismissal.[3] *Hicks,* at n. 14. *See also Colorado Springs Amusements, Ltd. v. Rizzo,* 524 F.2d 571 (3rd Cir. 1975), *cert. denied,* 428 U.S. 913, 96 S.Ct. 3228, 49 L.Ed.2d 1222 (1976) (Brennan, J., dissenting).

The New Mexico statute at issue in *Kimbell* provides, in relevant part, that an unemployed person may get state unemployment compensation unless his unemployment is due to a stoppage of work which exists because of a labor dispute at his last place of employment. *New Mexico Unemployment Compensation Law of 1936,* § 59–9–5(d), N.M.Stat.Ann. (Supp.1975).

The striker-claimants in *Kimbell* were meat department employees of various retail food stores, a multi-employer bargaining unit. A contract dispute arose, and the meat department employees went on strike. They remained off work for approximately a month and a half until the contract dispute was finally settled. The meat department employees applied for and received unemployment compensation from the New Mexico Employment Security Commission. This decision was appealed to the New Mexico District Court for the Second Judicial District, and an order was entered denying the payment of unemployment compensation. The District Court concluded that the claimants had been involved in a labor dispute at their last place of employment and that a stoppage of work had occurred as a result of the labor dispute. The court found that:

Under the facts of this case payment of unemployment compensation benefits to the claimants herein would interfere with the national policy of Federal Labor Law of encouraging self organization and collective bargaining without state interference in the use of economic weapons available to both labor and management, including the policies enunciated in 29 U.S.C. §§ 157–158, on contravention of the Supremacy Clause of Article VI of the Constitution of the United States.

*Kimbell, Inc. v. Employment Security Commission of the State of New Mexico,* Consolidated Case No. 6–73–08568, p. 9 of Findings of Fact and Conclusions of Law (N.M. Dist.Ct., Second Dist., filed October 11, 1974).

An appeal was taken to the New Mexico Supreme Court which summarily reversed the lower court on the basis of its decision in *Albuquerque-Phoenix Express, Inc. v. Employment Security Commission of New Mexico,* 544 P.2d 1161 (N.M.1975). *Kimbell, Inc. v. Employment Security Commission of New Mexico,* No. 10323, New Mexico Supreme Court (Dec. 29, 1975).

The state supreme court *Albuquerque* had upheld the grant of unemployment compensation to strikers after finding that the claimants were available for and were actively seeking work as required by § 59–9–4(A)(3), N.M.Stat.Ann. 1953 Comp.; that they had not left work voluntarily within the meaning of § 59–9–5(a), N.M.Stat.Ann. 1953 Comp., and that there was no stoppage of work at the company's premises which would disqualify them under § 59–9–5(d), N.M.Stat.Ann. 1953 Comp.[4]

The *Kimbell* decision went to the United States Supreme Court on appeal. It was summarily dismissed *for want of a substan-*

---

3. *See generally,* Comment, The Precedential Weight of a Dismissal by the Supreme Court for Want of a Substantial Federal Question, 76 Colum.L.Rev. 508 (1976).

4. The federal preemption issue was mentioned only briefly when the court distinguished the case from *Hawaiian Telephone Co. v. State Department of Labor & Industrial Relations,* 405 F.Supp. 275 (D.Hawaii 1976). *Albuquerque,* at n. 1.

tial federal question. The Steelworkers now argue that the Supreme Court has thus decided that statutes allowing strikers to get unemployment benefits do *not* contravene the Supremacy Clause of the United States Constitution, and that there is no conflict between such statutes and federal labor law. Accordingly, the Steelworkers contend that there are no longer any factual issues for this court to resolve in this case and that they are entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure.

■ The summary dismissal of *Kimbell* does not compel the granting of summary judgment in this case. The New Mexico statute differs significantly from the Michigan statute in that the New Mexico statute prohibits strikers from getting unemployment benefits if there is a stoppage of work due to a labor dispute at their last place of employment. (Stoppage of work is defined in New Mexico as "a cessation or substantial curtailment of the employer's business." *Albuquerque, supra* at 1166.) The Michigan statute's limitations on strikers' receipt of unemployment benefits is defined solely in terms of the strikers' ability to obtain interim employment; the possible adverse effects of the strike on the employer's business is irrelevant. Yet it is Dow's position that giving strikers unemployment benefits permits them to prosecute the strike more effectively and so increases the adverse effects of the strike upon the employer. Dow maintains that it is precisely this state assistance to strikers and its alleged adverse impact on employers which contravenes federal labor policy. Earlier in this case this court has held that a trial is needed in order to determine the degree of impact upon Dow of the payment of unemployment benefits to strikers. *Dow Chemical Co. v. Taylor,* 57 F.R.D. 105 (E.D.Mich. 1972). The court sees nothing in *Kimbell* which mandates a different result.

Certainly, the United States Supreme Court in *Kimbell* has ruled on the New Mexico statute, but this does not mean that it has thereby found that statutes like the Michigan statute do not contravene federal labor policy. (Note that in *Hicks* the Cali-fornia obscenity statute at issue was *identical* to the California statute under consideration in the prior case dismissed for want of a substantial federal question.) The *ratio decidendi* of the ruling on the New Mexico statute remains unclear. The state supreme court decisions in *Kimbell* and *Albuquerque* may be read as holding that if strikers are permitted to obtain unemployment benefits in a stoppage of work situation, there is implicitly a violation of both the New Mexico statute and the United States Constitution, but if there has been no stoppage of work strikers may obtain benefits without violating either the New Mexico statute or the United States Constitution. Possibly the United States Supreme Court concluded that the New Mexico statute presented no problems only because it contained a provision disqualifying strikers in the event of a successful strike. As the New Mexico Attorney General noted in his Motion to Dismiss the Appeal to the United States Supreme Court:

> [T]he interpretation by the New Mexico Supreme Court as to when benefit payments to strikers might be authorized runs directly counter to the employees strike objectives which is to impose as substantial an impact on the employers' business operations as possible to increase his economic burden and persuade him to a satisfactory settlement. . . .

Appendix B to the Steelworkers Brief in Support of Motion for Summary Judgment. *See* also the Memorandum for the United States as Amicus Curiae in *Kimbell* arguing that the appeal should be dismissed for want of a substantial federal question:

> [T]he New Mexico law permits compensation to strikers only where no "stoppage of work" results from their efforts, and the Supreme Court of New Mexico has interpreted that phrase to mean a work stoppage which results in a substantial curtailment of the employer's operations. Thus, the New Mexico law does not provide the strikers with an expectation of payment upon which they could rely in planning their strategy; indeed, the condition under which compensation may be paid runs directly counter to the employ-

ees' strike objective of imposing as substantial an impact on the employer's business operations as possible. . . . (footnotes omitted).

Appendix C to the Steelworkers Brief in Support of Motion for Summary Judgment. Since the New Mexico statute does incorporate its own test for substantial impact on the employer, the Supreme Court may have found that it protects the employer sufficiently; that the state's neutrality in the collective bargaining process is preserved; and that the statute is compatible with federal labor law.

■ The Michigan statute does not require a finding of no substantial impact upon the employer before unemployment benefits are awarded; its operation may contravene federal labor policy. A final determination can only be made in a trial.

The Steelworkers argue that the Michigan and New Mexico statutes are substantially the same as to the constitutional issue raised, and to the extent they differ, the New Mexico statute is more vulnerable to a Supremacy Clause challenge than is the Michigan statute. The Steelworkers reason that the Michigan statute is more restrictive on striker eligibility and less intrusive into the collective bargaining process. These arguments overlook the basic point that the significant distinguishing feature of the New Mexico statute is the protection which it gives the employer.

The Steelworkers cite *Whitlow v. Hodges*, 539 F.2d 582 (6th Cir. 1976), *cert. denied*, —— U.S. ——, 97 S.Ct. 654, 50 L.Ed.2d 632 (1976), in support of their contention that the Michigan statute need not be identical to that of New Mexico for *Kimbell* to be dispositive. Such reliance is misplaced. The United States Court of Appeals for the Sixth Circuit decided in *Whitlow* that a Kentucky regulation requiring a married woman to use her husband's name when applying for a driver's license was constitutional because the United States Supreme Court had affirmed without opinion a three-judge court approval of a similar Alabama requirement, *Forbush v. Wallace*, 341 F.Supp. 217 (M.D.Ala.1971), *aff'd*, 405 U.S. 970, 92 S.Ct. 1197, ? ' .Ed.2d 246 (1972).

The United States Court of Appeals for the Sixth Circuit did not consider it necessary that the common law of the two states be the same because it considered the primary thrust of the *Forbush* opinion to be "directed to the question of whether the challenged regulation has a rational connection with a legitimate state interest." *Whitlow* at 583. The ground for decision in *Kimbell*, on the other hand, may be directly dependent on the specific provisions of the New Mexico statute, provisions not found in the Michigan statute. The dismissal of the *Kimbell* appeal does not, therefore, dispose of the instant case.

Accordingly, the Steelworkers Motion for Summary Judgment is DENIED. An appropriate order may be submitted.