SUPER TIRE ENGINEERING
COMPANY et al., Appellants,

v.

Lloyd W. McCORKLE, Commissioner of
the Department of Institutions and
Agencies of the State of New Jersey, et
al., Local 676, Teamsters Union, etc. (Intervenor in District Court).

No. 76–1869.

United States Court of Appeals,
Third Circuit.

Argued Feb. 14, 1977.

Decided Feb. 25, 1977.

Gerard C. Smetana, William H. DuRoss, III, Borovsky, Smetana, Ehrlich & Kronenberg, Washington, D. C., Herbert G. Keene, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for Super Tire Engineering Company, and others; Harold Finkle, New York City, of counsel.

William F. Hyland, Atty. Gen. of New Jersey, Trenton, N. J., for Commissioner of the New Jersey Department of Institutions and Agencies, and Director, New Jersey Division of Public Welfare; Stephen Skillman, Asst. Atty. Gen., of counsel and on brief; Paul Watter, Deputy Atty. Gen., Trenton, N. J., on brief.

Martin F. McKernan, Jr., City Atty., Camden, N. J., for Juanita Dicks, Former Welfare Director for the City of Camden; Frederick Loats, Law Student, of counsel and on brief.

Robert F. O'Brien, Tomar, Parks, Seliger, Simonoff & Adourian, Camden, N. J., for intervenor-appellees.

John D. O'Brien, Michael A. Caldwell, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D. C., for the Transportation Association of America, amicus curiae.

Before ALDISERT and GARTH, Circuit Judges, and McCUNE, District Judge.*

OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal raises two parallel issues: whether New Jersey regulations [1] which permit welfare payments to workers on strike are inconsistent with and, therefore, precluded by federal labor policy; and whether those same regulations are inconsistent with and precluded by federal welfare policy. The district court concluded that New Jersey's regulations were not contrary to either federal policy and granted the defendants' motion for summary judgment. Believing that the labor policy issue is foreclosed by *Kimbell, Inc. v. Employment Security Commission*, 429 U.S. 804, 97 S.Ct. 36, 50 L.Ed.2d 64 (1976), and agreeing with the district court's analysis of the welfare policy issue, we affirm.

I.

This case has been in litigation since 1971, and has been in this court before. The

---

* Honorable Barron P. McCune, of the United States District Court for the Western District of Pennsylvania, sitting by designation.

1. General Public Assistance Law, N.J.S.A. § 44:8–107 *et seq.*; Assistance to Families of The Working Poor, N.J.S.A. § 44:13–1 *et seq.*; Assistance for Dependent Children, N.J.S.A. § 44:10–1 *et seq.*; Aid to Needy Families with Dependent Children of Unemployed Fathers, 42 U.S.C. § 607. (*See* part III, *infra*.)

strike that precipitated the action was settled in June, 1971, during the initial proceedings in the district court. That court nevertheless ruled on the merits and an appeal was taken here. Concluding that the settlement of the strike mooted the case, we remanded the proceedings with directions to vacate and dismiss as moot. 469 F.2d 911 (3d Cir. 1972). The Supreme Court granted certiorari to consider the mootness issue and disagreed with our conclusion, holding that "the facts here provide full and complete satisfaction of the requirement of the Constitution's Art. III, § 2, and the Declaratory Judgment Act, that a case or controversy exist between the parties." 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974). Accordingly, our judgment was reversed and the case remanded for further proceedings on the merits. Those proceedings have now been held in the district court and a decision has been rendered that New Jersey's practice of paying welfare benefits to strikers is not inconsistent with federal labor or welfare policy. The correctness of that decision is the subject of the present appeal to this court.

## II.

The essence of appellants' argument concerning federal labor policy is that New Jersey's welfare payments to workers on strike enhance the economic strength and resiliency of the union in collective bargaining, thereby distorting the bargaining process and interfering with the free operation of economic forces which federal labor policy seeks to preserve in the collective bargaining process. Whatever merit this argument might have had in the past, we believe that it is now foreclosed by the Supreme Court's dismissal for want of a substantial federal question in *Kimbell, Inc. v. Employment Security Commission, supra.*

## A.

*Kimbell* was an appeal under 28 U.S.C. § 1257(2)[2] from the Supreme Court of New Mexico to the Supreme Court of the United States. In *Kimbell,* the lower state court, the New Mexico District Court, had made an express finding that "payment of unemployment compensation benefits to the claimants herein [who were on strike] would interfere with the national policy of Federal Labor Law of encouraging self organization and collective bargaining without state interference." This ruling was directly challenged on appeal to the state Supreme Court. Point III of the appellant's brief in chief before that court was as follows:

Payment of unemployment compensation benefits to claimants whose unemployment is due to a labor dispute raises no constitutional conflict with federal labor policy under the supremacy clause of Article VI of the United States Constitution.[3]

The New Mexico Supreme Court reversed summarily:

On the basis of the Court's opinion in *Albuquerque-Phoenix Express v. Employment Security Commission,* 88 N.M. 596, 544 P.2d 1161 (1975), the Judgment of the District Court of the Second Judicial District is reversed.

The cited opinion, *Albuquerque-Phoenix Express,* had been filed 5 days earlier and adjudicated certain state law issues relating to the payment of unemployment compensation to strikers. In a footnote, however, the New Mexico Supreme Court rejected the notion that such payment might be contrary to federal labor policy:

We note the recent case of *Hawaiian Tel. Co. v. State of Hawaii Dept. of L. and I. Rel.,* 405 F.Supp. 275 (D.Hawaii 1975),

---

**2.** § *1257. State courts; appeal; certiorari*

Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court as follows:

.    .    .    .    .

(2) By appeal, where is drawn in question the validity of a statute of any state on the

ground of its being repugnant to the Constitution, treaties or laws of the United States, and the decision is in favor of its validity.

**3.** This information is obtained from the jurisdictional statement filed in the United States Supreme Court by counsel for Kimbell, Inc.

wherein the Federal District Court of Hawaii declared that the State of Hawaii's interpretation and application of the "stoppage of work" clause in its Unemployment Compensation Act so impermissibly alters the relative economic strength of union versus employer in their bargaining relationship as to thereby encroach upon the field preempted by the National Labor Relations Act in violation of the supremacy clause of the U.S. Constitution. We do not find this decision persuasive because it totally overlooks the fact that in order to qualify for unemployment compensation a striker must be available for, and actively seeking work.

*Albuquerque-Phoenix Express, Inc. v. Employment Security Commission,* 88 N.M. 596, 544 P.2d 1161 (1975).

In a motion for rehearing in the New Mexico Supreme Court, counsel for Kimbell, Inc. objected that the federal issue "was not, according to the understanding of counsel for Appellees, raised in the appeal in *Albuquerque-Phoenix Express,*" that the statement in that case was "mere *dicta,*" and that the issue "should be specifically addressed by this Court in that the matter be clearly presented in further proceedings, if necessary, before the United States Supreme Court." The motion for rehearing was denied, and appeal was subsequently taken to the United States Supreme Court under § 1257(2). According to the Solicitor General's Memorandum for the United States as Amicus Curiae,[4] the question presented to the Supreme Court was "whether New Mexico's limited grant of unemployment compensation benefits to strikers is in conflict with, and thus precluded by, federal labor law." The appeal was dismissed for want of a substantial federal question.

■ *Hicks v. Miranda,* 422 U.S. 332, 344, 95 S.Ct. 2281, 2289, 45 L.Ed.2d 223 (1975) teaches that votes "to dismiss for want of a substantial federal question, it hardly needs comment, are votes on the merits of a case." (quoting *Ohio ex rel. Eaton v. Price,* 360 U.S. 246, 247, 79 S.Ct. 978, 3 L.Ed.2d 1200 (1959)). Of course, in such cases of summary adjudication, it is not always crystal clear what exactly was adjudicated by the Supreme Court. In this case, moreover, we face the double difficulty that the state court decision appealed from was also a summary adjudication. But here we have had the advantage of thorough briefing, including supplemental briefing, and we have been able to examine the relevant state court decisions as well as the pertinent pleadings filed in the New Mexico courts and the United States Supreme Court in *Kimbell.* We can only conclude that, when the Supreme Court dismissed for want of a substantial federal question in *Kimbell,* the necessary predicate for that dismissal was a determination that federal labor policy did not preclude the payment of unemployment compensation to strikers. That determination controls the labor policy aspect of this case.

### B.

In their Reply and Supplemental Briefs appellants advance essentially three arguments to avoid the peremptory effect of *Kimbell.* First, citing *Herb v. Pitcairn,* 324 U.S. 117, 65 S.Ct. 459, 89 L.Ed. 789 (1944) they argue that the state court decision appealed from in *Kimbell* rested on non-federal grounds and was, therefore, not subject to review in the United States Supreme Court. In a related, but distinct, second argument they contend that the New Mexico Supreme Court did not decide the federal issue in *Kimbell* and, according-

4. We have also examined the appellants' Jurisdictional Statement, the appellees' Motion to Dismiss the Appeal, and the brief of the Chamber of Commerce of the United States of America as Amicus Curiae filed in the United States Supreme Court in the *Kimbell* appeal. Though differing in phraseology, all present the federal labor policy question. The appellees' Motion to Dismiss, for example, phrases the question presented thus:

Does the grant of unemployment compensation benefits to strikers by the State of New Mexico contravene the Supremacy Clause of Article VI of the Constitution of the United States by interfering with the preemptive jurisdiction of federal labor law?

ly, that the Solicitor General's Memorandum "addressed an issue not decided below." Third, they argue, if *Kimbell* has precedential force, it is nevertheless distinguishable because it involved unemployment compensation, not welfare benefits. These arguments all miss the mark.

■ *Herb v. Pitcairn* is a lineal descendant of Mr. Justice Miller's celebrated opinion in *Murdock v. City of Memphis,* 20 Wall. 590, 22 L.Ed. 429 (1875), which established the principle that the Supreme Court will not review for federal error the judgments of state courts that rest upon independent and adequate state grounds. But that principle is inapplicable to an analysis of *Kimbell* for the simple reason that there could be no state ground that would be adequate to support New Mexico's payment of unemployment compensation to strikers if such payment were precluded by federal law.

Appellants' second argument is more troublesome but equally unavailing. To the extent that appellants are contending that the federal issue was not *raised* in the state Supreme Court in *Kimbell,* they are simply wrong. As we have indicated, the lower state court expressly decided the federal issue and its decision was directly challenged on appeal. "No particular form of words or phrases is essential, but only that the claim of invalidity and the ground therefor be brought to the attention of the state court with fair precision and in due time. And if the record as a whole shows either expressly or by clear intendment that this was done, the claim is to be regarded as having been adequately presented." *New York ex rel. Bryant v. Zimmerman,* 278 U.S. 63, 67, 49 S.Ct. 61, 63, 73 L.Ed. 184 (1928) (quoted in C. Wright, Federal Courts § 107, at 541 (3d ed. 1976)). We have found no indication whatsoever that the federal issue was not timely and properly raised before the New Mexico Supreme Court in *Kimbell.* Appellants, in their Supplemental

Brief in this court, admit that the federal issue "was briefed by both sides to the New Mexico Supreme Court." Appellants' Supplemental Brief at 6. Indeed, if the United States Supreme Court had concluded that the validity of the state law had not been timely "drawn in question" on federal grounds as required by § 1257(2), it would not have entertained jurisdiction in *Kimbell. See, e. g., Herndon v. Georgia,* 295 U.S. 441, 55 S.Ct. 794, 79 L.Ed. 1530 (1935).

■ To the extent that appellants, in their second argument, are contending that the federal issue, though raised, was not *decided* by the state high court in *Kimbell* they ignore both the reference to *Albuquerque-Phoenix Express* and, more elementally, the basic jurisprudential fact that not to decide is to decide. Federal rights "are denied as well by the refusal of the state court to decide the question, as by an erroneous decision of it." *Lawrence v. State Tax Commission,* 286 U.S. 276, 282, 52 S.Ct. 556, 558, 76 L.Ed. 1102 (1932). The federal question was raised and, if decided adversely to state law, it was controlling. Under these circumstances, a state high court does not defeat federal review merely by issuing a tight-lipped decision in favor of the challenged state law. The New Mexico Supreme Court may not have *discussed* the federal issue in its summary disposition in *Kimbell* but for purposes of § 1257(2) it necessarily *decided* the issue, adversely to the claim that the state practice offended federal law when it reversed the lower court's decision upholding the notion that payment of state unemployment benefits interfered with the national labor policy. This would be so even if the reversal had not cited *Albuquerque-Phoenix Express.* Again, if the United States Supreme Court had concluded that there was no "decision" in favor of the validity of the state law as required by § 1257(2), it would not have entertained jurisdiction in the case[5] and

5. *See, e. g., Street v. New York,* 394 U.S. 576, 581–83, 89 S.Ct. 1354, 1360, 22 L.Ed.2d 572 (1969) (footnotes omitted):

The New York Court of Appeals did not mention in its opinion the constitutionality of

the "words" part of § 1425, subd. 16, par. d. Hence, in order to vindicate our jurisdiction to deal with this particular issue, we must inquire whether that question was presented to the New York courts in such a manner

would not have reached the merits as it did. *Hicks v. Miranda, supra.*

■ The precedential impact of *Kimbell,* undoubtedly, would have been easier to ascertain if the New Mexico Supreme Court had written an opinion expressly treating the federal claim. But the unfortunate fact that appellate courts no longer have the luxury of writing an opinion in every case does not change settled precepts of appealability under § 1257(2), nor does it alter the rule of *Hicks v. Miranda.* Though the United States Supreme Court's summary disposition in *Kimbell* might not have the *same* precedential value as an opinion on the subject, *see Tully v. Griffin, Inc.,* 429 U.S. 68, 74, 97 S.Ct. 219, 50 L.Ed.2d 227 (1976), the reality is that the Supreme Court has already determined the issue before us and we are bound by its determination. The Court determined that no substantial federal question was presented by a claim that state unemployment compensation for strikers is contrary to federal labor policy. Logically subsumed in that ultimate determination is a rejection of the substantive contention that federal labor policy precludes such compensation.

■ Appellants' third argument, that *Kimbell* is distinguishable,[6] is also unavailing. Appellants point out, quite correctly, that *Kimbell* involved unemployment compensation whereas this case concerns welfare benefits. Undoubtedly there is a distinction between these two forms of payments but, unfortunately for appellants, the distinction cuts the wrong way. Unemployment compensation provides a higher level of payment than welfare, intended not merely to provide subsistence but to replace lost earning power. As such, it is more economically disruptive of the collective bargaining balance than welfare, and it is less necessary in elemental human terms than welfare. But these considerations persuade us that this case follows a *fortiori* from *Kimbell*: a decision that labor policy does not preclude the payment of unemployment compensation to strikers necessarily subsumes a decision that labor policy does not preclude the payment of welfare benefits to strikers. The greater includes the lesser. Whether we say that *Kimbell* controls *ex proprio vigore,* or whether we say it controls by logical inclusion, the brute fact is that it controls. Accordingly, we reject the contention that New Jersey's welfare regulations are inconsistent with federal labor policy.

### III.

■ We also find no merit in the argument that New Jersey's payments made under the general Public Assistance program, N.J.S.A. 44:8–197 *et seq.,* and the Assistance to Families of The Working Poor Program, N.J.S.A. 44:13–1 *et seq.,* conflict with federal welfare policy, because the federal government plays no role in either program. In this appeal, we need not con-

that it was necessarily decided by the New York Court of Appeals when it affirmed appellant's conviction.

.    .    .    .    .

The issue whether a federal question was sufficiently and properly raised in the state courts is itself ultimately a federal question, as to which this Court is not bound by the decision of the state courts. However, it is not entirely clear whether in such cases the scope of our review is limited to determining whether the state court has "by-passed the federal right under forms of local procedure" or whether we should decide the matter "*de novo* for ourselves." *Ellis v. Dixon,* 349 U.S. 458, 463, 75 S.Ct. 850, 99 L.Ed. 1231 (1955). In either event, we think appellant has met the burden of showing that the issue of the constitutionality of the "words" part of

§ 1425, subd. 16, par. d, was adequately raised in the state trial court.

**6.** Appellants provided this court, immediately prior to oral argument, with a copy of the opinion of the United States District Court for the Eastern District of Michigan in *Dow Chemical Co. v. Taylor,* 428 F.Supp. 86 (E.D.Mich., Feb. 9, 1977). *Dow Chemical* acknowledged the precedential effect of *Kimbell* under *Hicks,* but distinguished *Kimbell* on the ground that the decision "may be directly dependent on the specific provisions of the New Mexico statute." *Ibid.* at 91. Though paying *Kimbell* formal deference, such an analysis has the effect of robbing the Supreme Court's disposition of any real precedential vitality. At least in the absence of specific direction from the Supreme Court, we are not persuaded to take such a nugatory approach to the rule of *Hicks.*

sider whether payments made to strikers under the Aid to Needy Families with Dependent Children of Unemployed Fathers program, 42 U.S.C. § 607, conflicts with federal welfare policy because New Jersey withdrew from that program effective June 20, 1971. Appellants' request for declaratory relief with respect to that program, therefore, is moot. While appellants' request for declaratory relief with respect to payments under the Assistance for Dependent Children program, N.J.S.A. 44:10–1 *et seq.*, is not moot, we are not persuaded by appellants' arguments on that score. We agree with the district court's careful analysis and conclusion that New Jersey's regulations are not inconsistent with federal welfare policy. 412 F.Supp. 192 (D.N.J. 1976).

The judgment of the district court will be affirmed.