614 F.2d 1197
 103 L.R.R.M. (BNA) 3042, 88 Lab.Cas. P 11,968
 HAWAIIAN TELEPHONE CO., etc., Plaintiff-Appellee,
and
Hawaii Employers Council et al., Plaintiffs-Intervenors,
v.
STATE OF HAWAII DEPT. OF LABOR & INDUSTRIAL RELATIONS et
al., Defendants,
International Brotherhood of Electrical Workers, AFL-CIO,
Local 1357, etc. et al., Defendants-Intervenors
and Appellants.
HAWAIIAN TELEPHONE CO., etc., Plaintiff-Appellee,
and
Hawaii Employers Council et al., Plaintiff-Intervenors,
v.
STATE OF HAWAII DEPT. OF LABOR & INDUSTRIAL RELATIONS et
al., Defendants- Appellants,
and
International Brotherhood of Electrical Workers, AFL-CIO,
Local 1357, etc. et al., Intervenors-Defendants.
 Nos. 76-1584, 76-2056.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 14, 1979.
Decided March 10, 1980.
 
 Jared H. Jossem, Honolulu, Hawaii, for Hawaiian Tel. Co.; Jared H. Jossem and Raymond Torkildson, on brief.
 Laurence M. Cohen and Jeffrey S. Goldman, Chicago, Ill., on brief, for Hawaii Employers Council.
 Frank K. L. Yap, Jr., Honolulu, Hawaii, for State of Hawaii Dept. of Labor; Wayne Minami, Atty. Gen., on brief.
 Marsha S. Berzon, San Francisco, Cal., for International Brotherhood of Electrical Workers; Edward H. Nakamura, Honolulu, Hawaii, J. Albert Woll and Laurence Gold, Washington, D.C., on brief.
 Appeal from the United States District Court for the District of Hawaii.
 Before WRIGHT and GOODWIN, Circuit Judges, and MURRAY*, District Judge.
 PER CURIAM:
 
 
 1
 The Hawaii Department of Labor appeals a judgment which struck down, on federal preemption grounds, a state statute[1] compelling employers under certain conditions to finance strikes against themselves. The Hawaii law permits strikers to collect unemployment compensation if their strike does not substantially curtail[2] the productive operations of their employer.
 
 
 2
 In 1974, a number of Hawaiian Telephone Company employees went on strike. When the strike ended the Hawaii Department of Labor began an inquiry to determine whether the strike had "substantially curtailed" the Company's productive operations. If the strike had not done so, the Department would have had to order retroactive employment benefits paid to the Company's striking employees. The Company under the statute would then have had to replenish the state employment compensation fund in an amount equal to the distributions to the strikers. Prior to completion of the departmental inquiry, however, the Company sought an injunction in the district court to bar the Hawaii Department of Labor from continuing with its investigation. The Company alleged that Congress, in enacting the National Labor Relations Act, had preempted state laws permitting strikers to collect unemployment benefits. The district court agreed, and declared Hawaii's law void.
 
 
 3
 The wisdom or even the fairness of Hawaii's economic legislation is not before us. We do not pass upon its merits. The only issue before us is federal preemption: specifically, whether our determination of the question of federal preemption in this case is controlled by the Supreme Court's summary dismissal of the appeal in Kimbell v. Employment Security Commission, 429 U.S. 804, 97 S.Ct. 36, 50 L.Ed.2d 64 (1976).
 
 
 4
 Denial of certiorari imports nothing about the merits of a case. "Summary disposition of an appeal, however, either by affirmance or by dismissal for want of a substantial federal question is a disposition on the merits." C. A. Wright, Handbook of the Law of Federal Courts 551 (3d edition 1976). Although a summary affirmance is "an affirmance of the judgment only . . . (and) not necessarily (of) the reasoning by which it was reached(,) . . . (s)ummary affirmances and dismissals for want of a substantial federal question without doubt reject the specific challenges presented in the statement of jurisdiction . . ." Mandel v. Bradley, 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977). Consequently, they "prevent lower courts from coming to opposite conclusions on the precise issues presented and necessarily decided." Id. See also Hicks v. Miranda, 422 U.S. 332, 344-345, 95 S.Ct. 2281, 2289-2290, 45 L.Ed.2d 223 (1975); In re Northwest Homes of Chehalis, Inc., 526 F.2d 505, 506 (9th Cir. 1975), cert. denied sub nom. Hansen v. Weyerhaeuser Co., 425 U.S. 907, 96 S.Ct. 1501, 47 L.Ed.2d 758 (1976).
 
 
 5
 The Hawaii statute alleged to be preempted (and the interpretation given that statute) is identical to the New Mexico statute against which the same claim was raised in Kimbell v. Employment Security Commission, supra.[3] Both statutes were challenged in their respective states by employers on grounds of federal preemption. The courts of first instance in Hawaii and New Mexico found that the National Labor Relations Act indeed had preempted these state laws providing for compensation to strikers at company expense. Hawaiian Telephone Co. v. Hawaii Department of Labor, 405 F.Supp. 275 (D.Haw.1976); Kimbell, Inc. v. Employment Security Commission, (Dist.Ct. of N.M., Bernalillo County). The Hawaii appellants appealed to this court. The New Mexico appeal went to the New Mexico Supreme Court, which reversed by a summary order. Kimbell, Inc. v. Employment Security Commission, No. 10323 (unreported order of the New Mexico Supreme Court, Dec. 29, 1975).[4] On appeal to the United States Supreme Court, the jurisdictional statement put the question:
 
 
 6
 ". . . Does the grant of unemployment compensation benefits to strikers by the state of New Mexico contravene the Supremacy Clause of Article VI of the Constitution of the United States by disrupting the operation of federal labor policy requiring state neutrality in the collective bargaining process?"
 
 
 7
 See 44 U.S.L.W. 3612. The Supreme Court dismissed the appeal for want of a substantial federal question. Kimbell v. Employment Security Commission, 429 U.S. 804, 97 S.Ct. 36, 50 L.Ed.2d 64 (1976).
 
 
 8
 Following this sequence of events, the Third Circuit in Super Tire Engineering Co. v. McCorkle, 550 F.2d 903, 905-908 (3d Cir.) cert. denied 434 U.S. 827, 98 S.Ct. 106, 54 L.Ed.2d 86 (1977), concluded that Kimbell was a binding precedent controlling the case before it. In Super Tire the Third Circuit was confronted with a New Jersey statute allowing welfare benefits for strikers. The employers of the strikers had challenged the statute as inconsistent with and therefore precluded by federal labor policy. The court dismissed their claim with these words:
 
 
 9
 ". . . (T)he (United States) Supreme Court has already determined the issue before us and we are bound by its determination. The Court (in Kimbell) determined that no substantial federal question was presented by a claim that state unemployment compensation to strikers is contrary to federal labor policy. Logically subsumed in that ultimate determination is a rejection of the substantive contention that federal labor policy precludes such compensation." 550 F.2d at 908.
 
 
 10
 The Second Circuit, however, in New York Telephone v. New York Department of Labor, 566 F.2d 388 (2d Cir. 1977), aff'd, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979), determined that Kimbell was not a binding precedent in the case before it. 566 F.2d at 391 n. 2.[5] In New York Telephone the Second Circuit was faced with a New York statute allowing unemployment compensation to strikers, and a challenge to that law by the employers of the strikers on grounds of preemption.
 
 
 11
 The challenged New York law differed from the New Mexico law in that New York paid compensation to strikers even if their strike completely closed their employer's operations. The statute in Kimbell had permitted payment of unemployment benefits to strikers only if the strike caused something less than a total closure of the employer's business.
 
 
 12
 Unlike the New York law before the Second Circuit, the Hawaii statute challenged here is identical to the New Mexico statute. Because it is, we follow Kimbell. In doing so we do not determine the maximum scope of Kimbell 's precedential effect: whether, for instance, we would find Kimbell controlling in circumstances like those in Super Tire. All we decide is that Kimbell must be followed here. If Kimbell is not controlling in a situation like this one, where the two state laws are identical, Kimbell, for practical purposes, would have no force as precedent.
 
 
 13
 In New York Telephone Co. v. New York Department of Labor, 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979), the Supreme Court held that federal labor law did not preempt the New York statute. Although no opinion of the Court commanded a majority of the justices, six justices agreed on the central point in issue Congress, in enacting the Social Security Act, intended to tolerate New York's law allowing unemployment compensation to strikers. As a result, there is nothing in the Supreme Court's opinion derogating from the reasoning which underlies Kimbell. The vitality of Kimbell 's precedential force therefore remains unimpaired. The New York Telephone plurality opinion in fact took note of the court's Kimbell holding in a footnote. 440 U.S. 519, 534, 99 S.Ct. 1328, 1338 n. 24, 59 L.Ed.2d 553 n. 24[6].
 
 
 14
 The Supreme Court in Kimbell held that New Mexico was free to assert its own policy in the compensation of striking employees. In New York Telephone, the same court held that New York was equally free to do so.[7] We must conclude that Hawaii also has the power to carry forward its own policy in this field.
 
 
 15
 Reversed.
 
 
 
 *
 The Honorable William D. Murray, Senior United States District Judge for the District of Montana
 
 
 [1]
 Haw.Rev.Stat. § 383-30 (1978 Code) Disqualification for Benefits. "An individual shall be disqualified for benefits:
 "(4) Labor dispute. For any week with respect to which it is found that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment or other premises at which he is or was last employed; . . ."
 
 
 [2]
 The Hawaii Supreme Court has interpreted the phrase "stoppage of work" to mean a "substantial curtailment" of the employer's productive operations. Meadow Gold Dairies v. Wiig, 50 Haw. 225, 437 P.2d 317 (1968)
 
 
 [3]
 The New Mexico statute provided that an applicant for unemployment compensation would be disqualified from receiving benefits "for any week with respect to which . . . his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed . . ." 1975 N.M.Laws Ch. 351, § 1 (codified at N.M.Stat.Ann. § 59-9-5(d) (Supp.1975); current version at N.M.Stat.Ann. 51-1-7(D) (1979). The New Mexico Supreme Court had interpreted the phrase "stoppage of work" to mean a "substantial curtailment" of the employer's productive operations. Albuquerque-Phoenix Express v. Employment Security Commission, 88 N.M. 596, 544 P.2d 1161 (1975). (Note: a 1979 amendment eliminated the work stoppage language from this code provision.)
 
 
 [4]
 The substance of the challenge is unaffected by the fact that in Hawaii a federal court adjudicated the federal preemption issue, while in New Mexico a state court adjudicated the issue
 
 
 [5]
 Note 2, 566 F.2d at 391, contains a clerical error. The New Mexico Supreme Court's Kimbell decision did not reverse Albuquerque-Phoenix Express, Inc. v. Employment Security Commission, 88 N.M. 596, 544 P.2d 1161 (1975). Rather, the court relied on the latter case in reversing the judgment of the lower state court in Kimbell
 
 
 [6]
 The footnote reads:
 ". . . It is true that only Rhode Island has a statutory provision like New York's that allows strikers to receive benefits after a waiting period of several weeks. See Grinnell Corp. v. Hackett, 475 F.2d 449, 457-459 (CA1 1973). But most States provide benefits to striking employees who have been replaced by nonstriking employees, and many States, pursuant to the so-called 'American rule,' allow strikers to collect benefits so long as their activities have not substantially curtailed the productive operations of their employer. See Hawaiian Telephone Co. v. Hawaii Dept. of Labor and Industrial Relations, 405 F.Supp. 275, 287-288 (D.Haw.1976), cert. denied, 435 U.S. 943, 98 S.Ct. 1522, 55 L.Ed.2d 539. For example, in Kimbell, Inc. v. Employment Security Commission, 429 U.S. 804, 97 S.Ct. 36, 50 L.Ed.2d 64, this Court dismissed for want of a substantial federal question an appeal from the Supreme Court of New Mexico which had held that a retroactive post-strike award of unemployment benefits to strikers under the 'American rule' was not pre-empted by federal labor law."
 
 
 [7]
 In addition, it should be noted that New York's statute is arguably less consistent with federal labor policy than is Hawaii's. (The Supreme Court's plurality in New York Telephone even seemed to imply this when it recognized that "unlike" states such as New Mexico and Hawaii, New York had "concluded that the community interest in the security of persons directly affected by a strike outweighs the interest in avoiding any impact on a particular labor dispute." 440 U.S. 519, 534, 99 S.Ct. 1328, 1338, 59 L.Ed.2d 553.) The New York law permits unemployment compensation to strikers even if their strike completely closes an employer's business. The Hawaii law, on the other hand, allows unemployment benefits to strikers only if their strike causes less than a substantial curtailment of the employer's work