676 F.Supp. 597 (1987)
EASTERN PARALYZED VETERANS ASSOCIATION OF PENNSYLVANIA INC., and James J. Peters
v.
Dudley R. SYKES, Commissioner, Philadelphia Department of Public Property, and City of Philadelphia.
Civ. A. No. 86-6797.
United States District Court, E.D. Pennsylvania.
August 14, 1987.
James D. Fornari, New York City, Peter S. Greenberg, Philadelphia, Pa., for plaintiffs.
Susan Shinkman, Philadelphia, Pa., for defendants.

MEMORANDUM
NEWCOMER, District Judge.

I. Introduction

This action centers on the renovation of the Columbia Avenue subway station in Philadelphia. Presently before the Court are two motions, defendants' motion to dismiss the complaint and plaintiffs' motion for partial summary judgment, and various responses. The Court has also received the Department of Transportation's amicus curiae memorandum of law. That memorandum focuses on the regulations promulgated by the Department of Transportation (DOT) regarding the accessibility of mass transportation facilities and mass transportation services for handicapped individuals. See generally 49 C.F.R. §§ 27.61-.67 (Subpart C) and §§ 27.71-.77 (Subpart D).
In a related case I determined that Subpart D controlled over Subpart C. Disabled in Action v. Sykes, C.A. 86-2316 slip op. at 18 (E.D.Pa. December 30, 1986) [Available on WESTLAW, 1986 WL 15020]. When Disabled in Action was decided, the Court did not have the benefit of DOT's interpretation of Subparts C and D. I have examined DOT's interpretation of the relationship between Subpart C and Subpart D *598 and the applicable legal standards, and I now conclude that the decision in Disabled in Action was not in accordance with DOT's regulations.

II. Facts

The facts surrounding the renovation of the Columbia Avenue subway station are set forth in the Disabled in Action opinion and need not be repeated here. Suffice it to say:
1. The renovations cost $5.3 million of which $4.3 million was received from the federal government.[1]
2. The early plans for the renovations included provisions for elevators as well as stairs.
3. Later, the City notified the Urban Mass Transportation Administration (UMTA) of its intention to delete the elevators from the renovation plans. UMTA informed the City that the deletion could be made without UMTA's approval.[2]
4. The Columbia Avenue subway station does have sufficient space for the installation of elevators. The elevators would cost $100,000 to $150,000 each with an annual maintenance cost of approximately $12,000 each.

III. The Legal Framework

The outcome of the present question depends on the interplay among various statutes, regulations, judicial decisions, and agency pronouncements. Thus, before examining the questions raised by the parties, it is first necessary to review the applicable law.
In 1973 Congress amended the Urban Mass Transportation Act (UMT Act), 49 U.S.C.A. § 1601a et seq., by providing that:
It is hereby declared to be the national policy that elderly and handicapped persons have the same right as other persons to utilize mass transportation facilities and services; that special efforts shall be made in the planning and design of mass transportation facilities and services so that the availability to elderly and handicapped persons of mass transportation which they can effectively utilize will be assured; and that all Federal programs offering assistance in the field of mass transportation (including the programs under this chapter) should contain provisions implementing this policy.
49 U.S.C.A. § 1612(a) (West 1976).
In 1975, Congress amended section 165(b) of the Federal-Aid Highway Act (FHWA), 23 U.S.C.A. § 101 et seq., to provide that:
The Secretary of Transportation shall require that projects receiving federal financial assistance under [23 U.S.C. § 142(a), (c), 23 U.S.C. § 103(e)(4) or] section 147 of the Federal-Aid Highway Act of 1973 shall be planned, designed, constructed, and operated to allow effective utilization by elderly or handicapped persons who, by reason of illiness, injury, age, congenital malfunction or other permanent or temporary incapacity or disability, including those who are nonambulatory wheelchair-bound and those with semiambulatory capacities, are unable without special facilities or special planning or design to utilize such facilities and services effectively. The Secretary shall not approve any program or project to which this section applies which does not comply with the provisions of this subsection requiring access to public mass transportation facilities, equipment, and services for elderly or handicapped persons.
See 23 U.S.C.A. § 142, note (West Supp. 1987).
Also implicated by the present litigation is 42 U.S.C.A. § 4151 et seq., the Architectural Barriers Act of 1968 (the "Barriers Act"). The Barriers Act requires that the General Services Administration consult with the Department of Health and Human Services and "prescribe standards for the design, construction, and alteration of *599 buildings ... to insure whenever possible that physically handicapped persons will have ready access to, and use of ... buildings." 42 U.S.C.A. § 4152 (West 1977). The definition of the term "building" appears in the margin.[3]
In addition, Congress, in 1973, enacted section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. § 794. The statute provides:
No otherwise qualified individual with handicaps in the United States, as defined in section 706(g) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.
29 U.S.C.A. § 794 (West Supp.1987). On April 28, 1976, President Gerald R. Ford directed the department of Health, Education and Welfare (HEW) to coordinate the implementation of the Rehabilitation Act, section 504, for all of the federal agencies. See Executive Order No. 11914 April 28, 1976 (entitled "Nondiscrimination with Respect to the Handicapped in Federally Assisted Programs").
In 1977, HEW issued a regulation to bind agencies and recipients of federal funds. 45 C.F.R. Part 84. The 1977 regulation required that:
each facility or part of a facility which is altered by ... a recipient ... shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by handicapped persons.
45 C.F.R. § 84.23(b). In 1978, HEW promulgated a coordination regulation, which applied "to each Federal department and agency that is empowered to extend Federal financial assistance." 45 C.F.R. § 85.2, 43 Fed.Reg. 2136 (1978). These regulations required:
Except as provided in paragraph (b) of this section, new facilities shall be designed and constructed to be readily accessible to and usable by handicapped persons. Alterations to existing facilities shall, to the maximum extent feasible, be designed and constructed to be readily accessible to and usable by handicapped persons.
In 1979 DOT enacted regulations entitled "Nondiscrimination on the Basis of Handicap in Programs and Activities Receiving or Benefiting from Federal Financial Assistance." 44 Fed.Reg. 31442 (1979) (codified at 49 C.F.R. Part 27 (1979)). DOT promulgated the regulations pursuant to Section 504 of the Rehabilitation Act, 29 U.S.C.A. § 794 and to comply with the HEW regulations outlined above. See 44 Fed.Reg. 31442.
The introductory section of Part 27 specifically stated:
§ 27.1 Purpose.
The purpose of this part is to carry out the intent of section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) as amended, to the end that no otherwise qualified handicapped individual in the United States shall, solely by reason of his or her handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal Financial assistance.
§ 27.3 Applicability.
This part applies to each recipient of Federal financial assistance from the Department of Transportation and to each *600 program or activity that receives or benefits from such assistance.
§ 27.5 Definitions.
As used in this part:
"Accessible" means (a) With respect to new facilities: (1) Conforming to the minimum standards of the "American National Standard Specifications for Making Buildings and Facilities Accessible to, and Usable by, the Physically Handicapped," (ANSI A 117.11961 (R.1971)) published by ANSI, Inc. ("ANSI Standards"), with respect to buildings and other fixed facilities to which ANSI standards are applicable; and (2) with respect to vehicles, other moving conveyances, or fixed facilities to which the ANSI standards do not apply, able to be entered and used by a handicapped person; (b) with respect to existing facilities, able to be entered and used by a handicapped person.
* * * * * *
49 C.F.R. §§ 27.1, 27.3, 27.5 (1979) (footnote omitted).
Subpart C of Part 27 focused on the accessibility to programs. Subpart D focused on specific accessibility requirements concerning airports, railroads, and highways. Subpart E focused on specific accessibility requirements concerning mass transportation. See 49 C.F.R. Part 27, Subparts C, D, E (1979).
Subpart C, by its express terms, applied to all programs which were controlled by section 504 of the Rehabilitation Act. In addition, Subpart C would yield to Subparts D and E to the extent that Subpart C was inconsistent with those subparts.
This subpart applies to all programs of the Department of Transportation to which section 504 is applicable. Additional provisions with respect to certain specific programs of the Department are set forth in subparts D and E. The provisions of this subpart should be interpreted in a manner that will make them consistent with the provisions of subparts D and E. In the case of apparent conflict, the provisions of subparts D and E shall prevail.
49 C.F.R. § 27.61 (1979). Subpart C went on to prohibit discrimination resulting from a program's inaccessibility to handicapped individuals.
No qualified handicapped person shall, because a recipient's facilities are inaccessible to or unusable by handicapped persons, be denied the benefits of, be excluded from participation in, or otherwise be subjected to discrimination under any program or activity to which this part applies.
49 C.F.R. § 27.63 (1979). Subpart C distinguished between the facilities which existed before the effective date of the regulations and those facilities which were constructed or altered after the effective date. With respect to already existing facilities, Subpart C provided that:
§ 27.65 Existing Facilities.
(a) Program accessibility. A recipient shall operate each program or activity to which this part applies so that, when viewed in the entirety, it is accessible to handicapped persons. This paragraph does not necessarily require a recipient to make each of its existing facilities or every part of an existing facility accessible to and usable by handicapped persons.
(b) Methods. A recipient may comply with the requirements of paragraph (a) of this section through such means as redesign of equipment, alteration of existing facilities and construction of new facilities in accordance with the requirements of § 27.65(d) [set forth, infra] or any other methods that result in making its program or activity accessible to handicapped persons. In choosing among available methods for meeting the requirements of paragraph (a) of this section, a recipient shall give priority to those methods that offer programs and activities to handicapped persons in the most integrated setting appropriate.
Subpart C's regulations concerning new facilities or old facilities which were "altered" stated:
§ 27.67 New Facilities and alterations.
(a) Design and construction. Each facility or part of a facility constructed *601 by, on behalf of, or for the use of a recipient shall be designed, constructed, and operated in a manner so that the facility or part of the facility is accessible to and usable by handicapped persons....
(b) Alteration. Each facility or part of a facility which is altered by, on behalf of, or for the use of a recipient after the effective date of this part in a manner that affects or could affect the accessibility of the facility or part of the facility shall, to the maximum extent feasible, be altered in such a manner that the altered portion of the facility is readily accessible to and usable by handicapped persons. (emphasis added).
Subpart C required that the construction of new facilities and the alteration of existing facilities comply with the American National Standard Specifications for Making Buildings and Facilities Accessible to, and Usable by, the Physically Handicapped.
(d) ANSI standards. Design, construction or alteration of fixed facilities in paragraphs (a) and (b) of this section shall be in accordance with the minimum standards in the "American National Standard Specifications for Making Buildings and Facilities Accessible to, and Usable by, the Physically Handicapped," published by ANSI, Inc. (ANSI A117.1-1961 (R1971)), which is incorporated by reference in this part. Departures from particular requirements of these standards by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided.
49 C.F.R. § 27.67(d)(1979).
As noted above, Subpart C was complemented by subparts D and E, which imposed additional specific requirements regarding the accessibility of facilities and services. Subpart D focused on airports, railroads, and highways, while Subpart E focused on mass transportation. Subpart E specifically required the modification, usually within three years, of all existing facilities to accommodate handicapped individuals. After the promulgation of 49 C.F. R. Part 27, DOT deleted[4] Subpart E and introduced a new section, section 27.77, in Subpart D. See 46 Fed.Reg. 37488-94; 49 C.F.R. § 27.77 (1981). The 1981 regulations did not modify the requirements of Subpart C.[5] The new § 27.77 of Subpart D did not impose any new requirements regarding mass transportation facilities. 46 Fed.Reg. 37489-90 ("The Interim Amendment" section and the "Section-by-Section Description" section contain no references to "facilities"). DOT also changed the title of Subpart D to "Program Accessibility Requirements in Specific Operating Administrative Programs: Airports, Railroads and Mass Transit" and, correspondingly, broadened the scope of Subpart D to include the provision of mass transit services. See 49 C.F.R. § 27.77(a)(4) (1981) ("[Compliance with § 27.77] shall be deemed to constitute compliance with section 504 of the Rehabilitation Act of 1973, section 16a of the Urban Mass Transportation Act of 1964, as amended, and section 165(b) of the Federal-Aid Highway Act of 1973, insofar as these statutes relate to the provision of mass transportation service that handicapped persons can use." (emphasis added)); accord 46 Fed.Reg. 37489 ("The Interim Amendment" and "Section-by-Section Description" refer to the provision of transportation that handicapped persons can use). Section 27.77 established a system through which recipients of federal assistance under the UMT Act could meet their obligations for ensuring the provision of transportation services that handicapped persons could use. 46 Fed.Reg. 37489. Specifically, DOT through an appendix to § 27.77 set forth three examples, the satisfaction *602 of which would constitute compliance with § 27.77.[6]
Compliance with the new § 27.77 of Subpart D would not satisfy a recipient's obligation under Subpart C. DOT, in the "Section-by-Section Description," expressly stated:
[49 C.F.R. § 27.77(a)(4)] recites that compliance with the certification under this subsection shall be deemed compliance with section 504, section 16, and section 165. Compliance in this context refers only to compliance with the obligation of recipients to ensure the provision of transportation service that handicapped persons can use (and planning for such transportation). The certificate does not stand for compliance with other requirements, such as nondiscrimination in employment on the basis of handicap. However, it does satisfy requirements such as the transition plan requirement of 49 C.F.R. 27.65(d).
46 Fed.Reg. 37490, cols. 2-3 (emphasis added). Furthermore, the new regulation, § 27.77(a)(4) specifically limited the application of Appendix A compliance to the provision of mass transportation service for handicapped persons:
The UMTA or FHWA Administrator shall accept such certification, and compliance with such certification shall be deemed to constitute compliance with section 504 of the Rehabilitation Act of 1973, section 16(a) of the Urban Mass Transportation Act of 1964, as amended, and section 165(b) of the Federal-Aid Highway Act of 1973, insofar as these statutes relate to the provision of mass transportation service that handicapped persons can use.

49 C.F.R. § 27.77(a)(4) (emphasis added). Subparts C and D provide independent requirements. Subpart C concerns the accessibility of transportation facilities; Subpart D concerns the accessibility of transportation services.

IV. Discussion

Defendants base their motion to dismiss on the Disabled in Action opinion. Defendants argue that res judicata bars plaintiffs from contesting the City's compliance with 49 C.F.R. Part 27. I disagree. Res judicata should not apply in instances where the Court's previous determination was not in accordance with the applicable legal standards. In Disabled in Action, plaintiff's counsel failed to apprise the Court of DOT's interpretation of Subparts C and D, and this Court did not ask DOT to set forth its views on the relationship between Subparts C and D. As the review of the legal framework, supra, and DOT's *603 interpretation of the relationship of Subparts C and D, discussed infra, reveal, the Disabled in Action opinion was in error. Accordingly, Disabled in Action should not receive res judicata effect, and defendants' motion to dismiss shall be denied.
Plaintiffs have moved for partial summary judgment.[7] Plaintiffs request the Court to declare that the obligations imposed by Subpart D of Part 27 of Title 49 of the Code of Federal Regulations, 49 C.F.R. § 27.77, do not relieve defendants of their separate and additional obligation to comply with Subpart C of Part 27 of Title 49 of the Code of Federal Regulations, 49 C.F.R. §§ 27.65-27.67.
Courts must accord considerable deference to an administrative agency's interpretation of a regulation which that agency drafted or administers. A court may not set aside an agency's interpretation unless the interpretation is inconsistent with the regulation's language.[8]
Turning to the present action, it is clear from the review of the legal framework, supra, that the addition of § 27.77 and Appendix A to Subpart D in 1981 did not affect Subpart C, § 27.61-.67. See 49 C.F.R. § 27.77(a)(4); 46 Fed.Reg. 37488, 37490 (1981). Moreover, in the amicus curiae memorandum, DOT stated:
DOT's intention is clearcompliance with 49 C.F.R. 27.77, regarding accessibility of transportation services, does not release federal fund recipients from compliance with Subpart C's requirements regarding the accessibility of transportation facilities.
DOT Memorandum at p. 10.
It is clear that Subparts C and D of DOT's regulation, 49 C.F.R. Part 27, established separate, independent criteria for compliance with the regulation, and both sets of requirements must be satisfied.
DOT Memorandum at p. 13. DOT's statement that the two subparts established two, separate and independent criteria for compliance with 49 C.F.R. Part 27 is consistent with the regulation's language. This Court shall accept DOT's interpretation of Subparts C and D quoted above. Accordingly, plaintiff's motion for partial summary judgment is granted.
DOT also opined that Subpart C, by itself, would not require the installation of an elevator at the Columbia Avenue subway station. DOT based its opinion on the preamble to the 1979 regulations which appears at 44 Fed.Reg. 31442, 31449.[9] At present, I need not address DOT's position. First, DOT did not fully excerpt the preamble. Second, DOT expressly did not address the question of the application of the Barriers Act, 42 U.S.C.A. § 4151, et seq., and the related GSA regulations, 41 C.F.R. Subpart 101-19.6, to the Columbia Avenue *604 station.[10] Third, DOT stated that "[n]ew fixed facilities and alterations to existing fixed facilities which are funded by a grant or loan from DOT must comply with the GSA regulations, supra. DOT intended that 49 C.F.R. § 27.67 reflect the basic requirement of GSA's regulation. 44 Fed. Reg. 31442, 31450 (1979). Therefore, DOT retained Subpart C's requirement that those portions of mass transportation facilities that are undergoing renovations must be made accessible to the maximum extent feasible. See 49 C.F.R. § 27.67(b)." DOT Memorandum at pp. 12-13, n. 9. Thus, there remains the question of whether Subpart C, and/or other statutes and regulations require the installation of elevators at the Columbia Avenue subway station.
A status conference shall be held on September 10, 1987, at 4:45 p.m.

V. Conclusion

For the reasons articulated above, defendants' motion to dismiss is denied, and plaintiffs' motion for partial summary judgment is granted.
An appropriate Order follows.

ORDER
AND NOW, this 14th day of August, 1987, it is hereby Ordered that:
1. Defendants' motion to dismiss is DENIED.
2. Plaintiffs' motion for summary judgment is GRANTED. Accordingly, it is hereby Ordered that the obligations imposed by Subpart D of Part 27 of Title 49 of the Code of Federal Regulations, 49 C.F.R. § 27.77, do not relieve defendants of their separate and additional obligation to comply with Subpart C of Part 27 of Title 49 of the Code of Federal Regulations, 49 C.F.R. §§ 27.65-27.67.
3. Defendants shall file an answer on or before August 26, 1987.
4. A status conference shall be held on September 10, 1987, at 4:45 p.m.
5. The Clerk shall forthwith send a copy of this opinion to the attorneys involved in Disabled in Action v. Sykes, C.A. No. 86-2316 (E.D.Pa.).
AND IT IS SO ORDERED.
NOTES
[1] See generally, Exhibit 2 to DOT's Memorandum, Preapplication of the City of Philadelphia for a Mass Transportation Capital Improvement Grant.
[2] See Exhibits 4, 5 to DOT's Memorandum.
[3] 42 U.S.C.A. § 4151 stated:

As used in this chapter, the term "building" means any building or facility ... the intended use for which either will require that such building or facility be accessible to the public, or may result in the employment or residence therein of physically handicapped persons, which building or facility is
(1) to be constructed or altered by or on behalf of the United States;
(2) to be leased in whole or in part by the United States after August 12, 1968 [Footnote omitted];
(3) to be financed in whole or in part by a grant or a loan made by the United States after August 12, 1968, if such building or facility is subject to standards for design, construction, or alteration issued under authority of the law authorizing such grant or loan.
* * * * * *
[4] The American Public Transit Association challenged the regulations soon after their promulgation. After review of the regulations, the D.C. Circuit Court of Appeals held that because Subpart E could require extensive and costly modifications of existing facilities and systems, Subpart E exceeded DOT's authority to enforce section 504 of the Rehabilitation Act. American Public Transit Ass'n v. Lewis, 655 F.2d 1272, 1276-80 (D.C.Cir.1981).
[5] The 1981 regulations did remove all references in Subpart C to Subpart E. See 46 Fed.Reg. 37492.
[6] 27.77 Urban Mass Transportation Administration Mass Transit.
(a) Certification. (1) Recipients of funds under sections 3 and 5 of the Urban Mass Transportation Act shall certify that special efforts are being made in their service area to provide transportation that handicapped persons, including wheelchair users and semiambulatory persons, can use. These special efforts shall be consistent with the guidance in Appendix A to this Subpart. Appendix B to this Subpart provides advisory information on planning transportation that handicapped persons can use.
* * * * * *
Appendix A
Advisory Information on Programming for Handicapped Persons
* * * * * *
UMTA will not specify a program design to meet the "special efforts" requirements. However, the following examples are illustrative of a level of effort that will be deemed to satisfy this requirement with respect to wheelchair users and semiambulatory persons:
1. A program for wheelchair users and semiambulatory handicapped persons that will involve the expenditure of an average annual dollar amount equivalent to a minimum of 3.5 percent of the financial assistance that the urbanized area receives under section 5 of the UMT Act.
* * * * * *
2. Purchase of only wheelchair-accessible new fixed route equipment until one-half of the fleet is accessible, or, in the alternative, provision of a substitute service that would provide comparable coverage and service levels.
3. A system, of any design, that would assure that every wheelchair user or semiambulatory person in the urbanized area would have public transportation available if requested for 10 round-trips per week at fares comparable to those which are charged on standard transit buses for trips of similar length, within the service area of the public transportation authority.
* * * * * *
49 C.F.R. § 27.77(a); Appendix A.
[7] The summary judgment standard is well established and need not be set forth in this Memorandum Opinion. See generally Brock v. Hunsicker, C.A. 86-6709 slip op. (E.D.Pa. July 1, 1987) [Available on WESTLAW, 1987 WL 13328].
[8] Lucas Coal Co. v. Interior Bd. of Mine Operations Appeals, 522 F.2d 581, 584 (3d Cir.1975); San Luis Obispo Mothers For Peace v. United States Nuclear Regulatory Commission, 789 F.2d 26, 30 (D.C.Cir.1986) (en banc).
[9] C.F.R. § 27.67(b)] is based on the belief that alterations present opportunities to design and construct the altered portion or item in an accessible fashion. It should be noted that [49 C.F.R. § 27.67(b)] applies only to the altered portion or item of a fixed facility. Thus, a stair renovation to meet the ANSI standard (American National Standards Institute) does not impose a requirement for elevator installation since an elevator is not within the scope of the stair alteration project. [49 C.F.R. § 27.67(b)] does not create the obligation to install an elevator in an existing fixed facility which has no elevator. The basic requirement in [49 C.F.R. § 27.67(b)] is simply to take the opportunities afforded by the alteration and, to the maximum extent feasible, use the alteration to make the facility accessible. Thus, normal maintenance may take place in practically all cases without generating an accessibility requirement.
In sharp contrast to [49 C.F.R. § 27.67(b)] the sections on specific mass transportation systems [Subpart E (subsequently deleted)] effectively do[es] require the installation of elevators or other level change mechanicisms in fixed facilities which have no elevators.
DOT omitted the underscored language when it quoted the preamble. See DOT Memorandum at p. 14.
[10] The GSA and the Architectual and Transportation Barriers Compliance Board are the appropriate entities to respond to inquiries regarding the GSA Barriers Act regulations. DOT Memorandum at pp. 18-19, n. 11.